566 A.2d 591

NORTHAMPTON COUNTY AREA COMMUNITY COLLEGE
and Northampton County Area Community
College Authority

v.

DOW CHEMICAL, U.S.A., Masonry Systems of Pennsylvania,
Inc., a/k/a Gramar, Inc., Wallace and Watson Associates,
Successor in Interest to Coston Wallace Watson, James T.
Hartnett Construction Co., Inc., and Clarence B. Haney Ma-
son Contractor, Inc., and Truett Coston, William Wallace and
William Watson, Individually and t/a Coston, Wallace and
Watson.

Appeal of WALLACE AND WATSON ASSOCIATES, Successor
in Interest to Coston, Wallace, Watson, James T. Hartnett
Construction Company, Inc.: Truett Coston, William Wallace
and William Watson, Individually and t/a Coston, Wallace
and Watson, Appellants.

NORTHAMPTON COUNTY AREA COMMUNITY COLLEGE
and Northampton County Area Community College
Authority, Appellants,

v.

DOW CHEMICAL, U.S.A., Masonry Systems of Pennsylvania,
Inc., a/k/a Gramar, Inc., Wallace and Watson Associates,
Successor in Interest to Coston Wallace Watson, James T.
Hartnett Construction Co., Inc., and Clarence B. Haney Ma-
son Contractor, Inc. and Truett Coston, William Wallace and
William Watson, Individually and t/a Coston, Wallace and
Watson.

Superior Court of Pennsylvania.

Argued May 23, 1989.

Filed Oct. 2, 1989.

Reargument Denied Dec. 7, 1989.

14

Susanne Longenhagen, Philadelphia, for appellants (at 3006PHL88) and appellees (at 316PHL89).

Shawn Kenny, Harrisburg, for Hartnett Const., appellant (at 3006PHL88) and appellee (at 316PHL89).

Mark A. Welge, Philadelphia, for Dow Chemical, appellee at (3006PHL88 and 316PHL89).

Paul Logan, King of Prussia, for Northampton, appellants (at 316PHL89).

Before BECK, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge.

Northampton Area Community College (the College) appeals from the trial court's grant of appellee Dow Chemical U.S.A. (Dow)'s motion for summary judgment. We are asked to decide whether a plaintiff community college may defeat a defense of the statute of limitations by asserting the doctrine of *nullum tempus occurrit regi* (literally, "time does not run against the King." Black's Law Dictionary (4th ed. rev. 1968 at 1217)). Because the legislature has conclusively defined Commonwealth parties for the purpose of asserting governmental privileges, and because we conclude that the Community Colleges are not covered by this definition, we hold that a community college may not assert the privilege of *nullum tempus*. Hence, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The College, located in Northampton County, Pennsylvania, was created pursuant to an enabling statute, The Community College Act of 1963, 24 P.S. § 5201, *et seq.*, which has since been repealed and replaced by 24 P.S. § 19–1901–A *et seq.* The Northampton Area Community College Authority (Authority) is a body created under another enabling act, the Municipality Authorities Act, 53 P.S. § 301 *et seq.* The College contracted with James T. Hartnett Construction Co., Inc. for construction of an Engineering and Business Technologies Center (the building). Prefabricated masonry panels containing Sarabond, a mortar bonding agent manufactured by Dow, were used in the

construction. These panels were manufactured by Masonry Systems of Pennsylvania, Inc. using Sarabond purchased from Dow. The panels were then sold to the general contractor. The architect issued a certificate of substantial completion for the building in 1973.

On January 12, 1979, Dow sent a letter to Leon Reichwein, the College's Vice President For Administrative Services, advising that the building may have been constructed with masonry panels containing Sarabond, and which could cause corrosion problems if Sarabond came into contact with unprotected steel "under certain conditions which may or may not exist in your building...." The letter suggested that the College have an inspection of the masonry construction performed by a qualified person and requested that Dow be permitted to be present during the inspection.

Leon Reichwein distributed the letter to each of the members of the College's board of trustees, the College's Superintendent of Buildings and Grounds and the College's President. He also informed the Authority's Board of Directors. Shortly after receipt of the letter the Superintendent of Buildings and Grounds visually inspected the building from the outside and noticed cracks. The architect as well as the College's counsel recommended that an independent party conduct a thorough inspection. The architect also apprised the College that Dow was a defendant in a lawsuit alleging masonry cracking due to Sarabond. The College negotiated with an independent architect for an inspection, but this proposed inspection never took place. Finally, in May of 1980, the College had Dow perform an inspection. Dow issued a report in July of 1981 concluding that the building was basically sound and that cracks in the masonry seemed to be caused by freeze-thaw conditions. In November of 1983 a Sarabond expert who reviewed Dow's report suggested that the masonry cracking in the building was most likely Sarabond related. On July 2, 1984 the College and the Authority commenced an action against Dow and the other defendants by writ of summons alleging

"in excess of $1,000,000.00" in damages. While the College brought the same allegations against the architects and the contractors, this appeal involves only the counts brought against Dow. The co-defendants had filed a notice of appeal which was subsequently withdrawn following Dow's reinstatement as a third-party defendant.

The College's first Complaint, filed on October 16, 1984, alleged that Dow breached express and implied warranties, that Dow was strictly liable for the damage to the building under § 402 A, Restatement of Torts (2d), and that Dow failed to warn of possible damage from Sarabond. Following discovery and with leave of court, the College filed an amended complaint on February 11, 1986 adding the allegations that Dow, knowing that Sarabond caused corrosion, fraudulently hid or misrepresented its knowledge and later intentionally falsified the inspection report.

On November 9, 1987 Dow filed a Motion for Summary Judgment alleging that the College had no standing to bring a breach of warranty action, that the statute of limitations barred the tort claims, and that the College had no cause of action in fraud because the College had the opportunity to discover the defects on their own and were thus not dependent upon any of Dow's representations. On January 5, 1988, following additional discovery, the College replied, asserting that privity was not required for a recovery for breach of contract, that, based upon the discovery rule, its causes of action were all filed within the applicable statutes of limitation, and that because Dow actively concealed Sarabond's harmful qualities, Dow was estopped from asserting any statute of limitations defense. Additionally, the College argued that it was a Commonwealth agency and thus any statute of limitations defense against it must fail under the doctrine of *nullum tempus occurrit regi.* The court granted Dow's motion by Order and Opinion of July 21, 1988. By order of August 25, 1988 the trial court reinstated Dow as a party solely with regard to the existing cross-claims by the co-defendants.

The College then appealed to the Commonwealth Court. On December 8, 1988 the Commonwealth Court determined that it had jurisdiction over neither the College nor the College Authority because neither entity was part of the Commonwealth government. The court transferred rather than dismissed the case because the underlying issues, "the threshold affirmative defense question of the statute of limitations, together with the related *nullum tempus* issue," are issues that regulate the affairs of all litigants. Hence this appeal.

On appeal the College argues that the statutes of limitation did not run against their various claims and that, even if they had run, they could not be asserted against the College under the doctrine of *nullum tempus*. We will first address the *nullum tempus* issue.

## NULLUM TEMPUS

*Nullum tempus*, which the sovereign asserts as plaintiff, must be viewed together with sovereign immunity, its coordinate doctrine, which the sovereign asserts when it is a defendant. In our system of government, unlike the monarchies under which they originated, these traditional privileges depend upon the legislature for their delineation and implementation. A sovereign asserts sovereign immunity as a defense to avoid the consequences of law under the traditional convention that the King can do no wrong. *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). The Pennsylvania Constitution gives the legislature the power to apply or, implicitly, to waive the privilege:

Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Const. art. I, § 11. Although the doctrine was abolished in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) and again in *Mayle v. Pennsylvania Department of Highways, supra* on the rationale that modern all-pervasive government should be held responsible

for its tortious conduct, the legislature re-established sovereign immunity by enacting the following statutory provision:

Sovereign immunity reaffirmed; specific waiver

Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. § 2310. Act of September 28, 1978, P.L. 788, No. 152, § 1. Having said that, the legislature specifically waived the sovereign immunity of the Commonwealth and allowed liability to be imposed within specific tort contexts set forth in 42 Pa.C.S. § 8522. Act of October 5, 1980, P.L. 693, No. 142, § 221.

■ When the Commonwealth, as a plaintiff, brings an action for which the statute of limitations has run, it may invoke *nullum tempus.* Under *nullum tempus,* statutes of limitation do not apply to the plaintiff Commonwealth unless the statute specifically provides that it does. *Commonwealth, Department of Transportation v. J.W. Bishop & Co.,* 497 Pa. 58, 439 A.2d 101 (1981). The rationale is that, in its role of plaintiff, the state seeks:

[T]o vindicate public rights and protect public property. Thus, since its adoption in this country, the rationale for the doctrine of *nullum tempus* has been "the great public policy of preserving public rights, revenues and property from injury and loss." *United States v. Hoar,* 26 Fed.Cas. 329, 330 (C.C.D.Mass. 1821) ... (Story, J.).... Moreover, the benefits and advantages of the doctrine of *nullum tempus* extend "to every citizen, including the defendant whose plea of ... limitations it precludes." *Guaranty Trust Co. of New York v. United States,* 304 U.S. [126] at 132, 58 S.Ct. [785] at 789 [82 L.Ed. 1224 (1938)].

*Bishop,* 497 Pa. at 64, 439 A.2d at 104. In *Bishop,* the court was asked whether *nullum tempus* was still viable in light of the judicial abrogation of sovereign immunity (prior to the legislative reinstatement). The court noted the distinction in the doctrines' rationales and concluded that it found no reason to extinguish the rule that a statute of limitation will not apply to the sovereign unless the words of the statute expressly state that the statute applies to the sovereign. Thus, the legislative power to waive *nullum tempus* was affirmed as well.

## COMMONWEALTH PARTY STATUS

Because authority discussing *nullum tempus* is scarce, both the College and Dow address whether the College may assert *nullum tempus* by analogizing to cases that address sovereign immunity. The College emphasizes the differences between the doctrines, while Dow emphasizes the doctrines' common roots. Both are correct to suggest a functional relationship, but both fail to recognize the dispositive factor, what the doctrines have in common: the same class of parties may invoke each. The legislature has clearly set forth the entities that comprise this class. Therefore, when the question is whether an entity is a Commonwealth party, a determination should and can be made solely with reference to the legislative intent as expressed in the statutes; no judicial test is required. That the rationales supporting the two doctrines differ has no bearing on the legislature's ultimate and exclusive power to grant or to waive each privilege. We conclude that to adopt the position that one doctrine may apply to a party while the other may not contravenes the plain intent of the legislature.

■ Generally, the issue of whether a statute of limitations will preclude a claim is properly addressed by a motion for summary judgment, and specifically, whether the doctrine of *nullum tempus* applies to negate a statute of limitations defense is a question of law that is properly decided on a motion for summary judgment. *See General*

*State Authority v. Lawrie and Green and John McShain, Inc.*, 64 Pa.Commw. 102, 439 A.2d 228 (1982).

The trial court found that the College and Authority were not Commonwealth parties and thus could not invoke *nullum tempus.* We agree, but we reach this conclusion by a different route. The trial court applied a traditional test for whether a governmental entity can claim governmental immunity, whether the controversy arose by virtue of a governmental or by virtue of a proprietary action by the entity. The court concluded that contracting for the college building was a proprietary and not a governmental function and therefore the College was not a Commonwealth party. The trial court then reached the underlying issues, found that the applicable statutes of limitation had expired for all the claims and granted Dow's motion for summary judgment. We agree with the trial court that all the applicable statutes of limitation had run. However, we conclude that statute and caselaw in this Commonwealth have rejected a "governmental vs. proprietary function" test [1] and, most significantly, such tests have been rendered obsolete by the recent legislative definitions and classifications of Commonwealth parties.

1. It has been suggested that the judicial tests like the one applied by the trial court were merely judicial rationalizations invoked for various policy reasons whenever it appeared that liability may prove too financially burdensome. *See* Bucci, *Judicial Clarification of a Common Law Doctrine: The Pennsylvania Doctrine of Official Immunity,* 84 Dick.L.Rev. 473 (1980). Determining when an entity is enforcing public rights and obligations has always been a source of difficulty; the efficacy of one of the traditional analyses used, whether an entity is performing a proprietary or governmental function, has been all but discredited. *See Ayala, supra;* "[The distinction] has caused confusion not only among the various jurisdictions but almost always within each jurisdiction (Citation omitted).... Compare *Shields v. Pittsburgh, supra* [408 Pa. 388, 184 A.2d 240 (1962)] (operation of playground during vacation is a governmental function) with *Morris v. Mt. Lebanon Township School District, supra,* [393 Pa. 633, 144 A.2d 737 (1958)] decided four years earlier, (operation of summer recreation program is a proprietary function)." *Ayala,* 453 Pa. at 598, 305 A.2d at 885. *See also Falls Township v. McManamon,* 113 Pa.Commw. 504, 537 A.2d 946 (1988). Further, the fiscal autonomy test, also used by courts to determine whether an agency is amenable to suit, is also no longer viable because of the legislative definitions of "Commonwealth agency." *See* 84 Dick.L.Rev., *supra.*

 The legislature's classification of Commonwealth parties is unambiguous. We must construe the statute according to its plain meaning and interpret it to give effect to legislative intent. *Commonwealth v. Edwards*, 384 Pa. Super. 454, 559 A.2d 63 (1989). Under 42 Pa.C.S. § 8522(a), the legislature waived sovereign immunity for "Commonwealth parties" with respect to certain enumerated actions. The legislature defines a Commonwealth party as:

> [A] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment.

42 Pa.C.S. § 8501.[2] Under 42 Pa.C.S. § 102, the definition section of the Judicial Code, a Commonwealth agency is "any executive or independent agency." An executive agency is "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government." An independent agency is defined as "boards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor ..." 42 Pa.C.S. § 102; *see Hall v. Acme Markets, Inc.*, 110 Pa.Commw. 199, 532 A.2d 894 (1987). All authorities and agencies coming under one of these categories are now amenable to suit in a tort action enumerated in § 8522. *See Gallagher v. Bureau of Correction*, 118 Pa.Commw. 516, 545 A.2d 981 (1988); *alloc. denied* 520 Pa. 620, 554 A.2d 511.

Therefore, we conclude that the Community Colleges cannot be construed as being Commonwealth parties under any of these definitions because the legislature did not create them but merely authorized their creation by means of an enabling statute, 24 P.S. §§ 19–1901 *et seq.* An examination of the enabling act further demonstrates the

---

**2.** The determination of liability for actions of individual officials, official immunity, which is a common law doctrine, is to be distinguished from the present discussion of whether an agency may assert sovereign immunity, a constitutionally-based doctrine. *See Freach v. Commonwealth*, 471 Pa. 558, 370 A.2d 1163 (1977). Determination of individual immunity may still require application of judicial tests.

accuracy of this interpretation of legislative intent. Under the act, "Community College:"

> ... [S]hall mean a public college or technical institute *which is established* and operated in accordance with the provisions of this act *by a local sponsor* which provides [a post-secondary program].

24 P.S. § 19–1901–A (emphasis added). A local sponsor is a:

> [s]chool district or a municipality or a county board of school directors or any combination of school districts, municipalities or county boards of school directors which participate in the establishment and operation of a community college.

24 P.S. § 19–1901–A (2). The local sponsor must submit a plan to the Board of Education, which must then approve or disapprove of the plan. The plan must outline the need for the proposed college, must outline the proposed financial backing and must propose the contemplated educational programs. In addition, the sponsor must set forth a detailed financial program for the college's operation, which shall provide:

> [T]hat at least two-thirds of the annual operating costs and up to one-half of the annual capital expenses shall be appropriated or provided by the local sponsor ... The plan shall indicate whether the appropriation shall come from general revenues, loan funds, special tax levies or from other sources, including student tuitions.

24 P.S. § 19–1913–A(a). The college is administered by a Board of Trustees, which may enter into contracts in the name of the college. All property purchased by the board of trustees shall be held in the name of a community college on behalf of the local sponsor of the college. 24 P.S. 19–1905–A.

Thus, the Commonwealth does not control the Colleges' creation and operation. Local establishment of Community Colleges implements the legislative purpose of creating community colleges in response to local needs, providing that local financial support could be developed. In contrast,

the legislature expressly created the State Colleges as part of its State System of Higher Education, a "public corporation and government instrumentality ... which shall consist of ... [the fourteen enumerated State Colleges]." 24 P.S. § 20–2002–A. Hence, as did the Commonwealth court, we reject the College's claim to Commonwealth party status. In relying upon the above-cited statutes to ascertain the status of an entity, we adopt an approach taken by other courts of this Commonwealth. For instance, in *Bradley v. Pennsylvania Turnpike Commission*, 121 Pa.Commw. 51, 550 A.2d 261 (1988), the court relied on the fact that the Turnpike Commission was included in the complete list of independent agencies in 71 P.S. § 732–102 and on that basis held that the Commission was therefore a Commonwealth agency entitled to sovereign immunity.

Further, we recognize that the privilege of *nullum tempus* does not, in the absence of express provision, usually extend to municipalities, counties, or other political subdivisions, *Pocono Township v. Hall*, —— Pa.Commw. ——, 561 A.2d 53 (1989); *City of Philadelphia v. Litvin*, 211 Pa.Super. 204, 235 A.2d 157 (1967), unless these entities seek to enforce strictly public rights and obligations imposed by law. *See Pocono Township, supra; City of Philadelphia v. Holmes Electric Protective Co.*, 335 Pa. 273, 6 A.2d 884 (1939). While we agree with the College that public education is a public right, the College does not argue that it is an integral part of any political subdivision. We conclude that it is as independent of municipalities and political subdivisions as it is independent of the Commonwealth.

For the same reason we reject the College's argument in the alternative that, regardless of its status as a Commonwealth party, application of the proprietary versus governmental functions test yields the result that any function having to do with education is a core governmental function. We have concluded that any "functions" test is obsolete when the legislature has, by defining Commonwealth parties, eliminated the need for it. *Bishop*, dis-

cussed supra, upon which the College heavily and erroneously relies, decided only that elimination of sovereign immunity as a general principle did not mean elimination of *nullum tempus* as a general principle. It did not hold that a party that may not assert one privilege may nevertheless assert the other. The college cites no authority, nor do we find any, for this proposition. In fact, in making this argument and suggesting that it may not be entitled to sovereign immunity, the College inadvertently pinpoints the critical weakness in its position. The legislature has now designated which entities are Commonwealth parties, and, as we held above, this is dispositive of whether an entity may assert any governmental privileges.

## ACCRUAL OF THE CAUSES OF ACTION

Having decided that the statutes of limitation may be asserted against the College, we will now discuss the College's remaining challenges to the trial court's ruling. There is no dispute over which statutes of limitation are applicable, nor are any of the facts in dispute. The trial court granted summary judgment because it determined that Spring of 1979 was the latest that any of the causes of action could have arisen. Because the applicable statutes of limitation in contract, tort and fraud ran before July 2, 1984, the date that the College commenced the action, the court granted Dow's motion for summary judgment. We find no error in the trial court's decision.

In reviewing a grant of a motion for summary judgment, the reviewing court must decide whether the record demonstrates both an absence of genuine issues of fact and an entitlement to judgment as a matter of law. Pa.R.C.P. 1035(b); *Chicarella v. Passant,* 343 Pa.Super. 330, 340, 494 A.2d 1109, 1114 (1985). When the date of accrual is certain, whether an action is timebarred is a question of law properly decided on a motion for summary judgment, unless there are disputed factual allegations. *Cathcart v. Keene Industry Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984). The College claims that its action was timely filed because,

under the discovery rule, the latent defect in the building was not reasonably discoverable until less than two years before it filed suit. The College claims that the date of accrual of the action is a disputed question of fact that makes summary judgment for Dow inappropriate. The College also claims that Dow should be estopped from asserting the statutes of limitation because it fraudulently induced the College to sit on its rights.

Under the judicially-created discovery rule, the running of the statute of limitations on a cause of action in tort may be delayed by a plaintiff's ignorance of its cause of action until such time as the cause of action could or should have been discovered through the exercise of due diligence. *Bickell v. Stein*, 291 Pa.Super. 145, 435 A.2d 610 (1981). If, as in this case, the plaintiff alleges the existence of a latent defect in construction, the cause of action does not accrue until the plaintiff became aware or, through exercise of reasonable diligence, should have become aware of the defect. *General State Authority v. Lawrie and Green and John McShain, Inc., supra.* While most questions relating to whether a party has exercised due diligence in discovering the incidentce of his injury so as to toll the statute are jury questions, *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981), summary judgment is proper where the plaintiff has failed to plead facts sufficient to toll the statute. *Id.* The College argues that the discovery rule applies to both its warranty and tort actions.

The trial court decided that, by virtue of Dow's January 12, 1979 letter to the College and the College's actual knowledge of the cracks, the facts pleaded established that the College reasonably should have become aware of the defect by the spring of 1979 at the latest. We have held that summary judgment is proper where the court can establish from undisputed facts the reasonable time for discovery of a defect. *Cathcart v. Keene Industrial Insulation, supra.* In *Cathcart,* an asbestos claim case, this Court, sitting en banc, decided that once the injured party discovers that he has an injury and that he is aware of the

cause, the burden is upon him to discover the party whose breach was responsible. We held that the mere allegation of difficulty in identifying the defendants was not sufficient to toll the statute of limitations for those defendants who had not been named in the initial action and were named in a subsequent action only after they had been finally discovered. Therefore we granted summary judgment in favor of these later-discovered defendants. *See also Huber v. McElwee-Courbis Construction,* 392 F.Supp. 1379 (E.D.Pa. 1974).

We now apply the same reasoning to the case before us and affirm the trial court's conclusion that the statute began to run when the College received the letter from Dow and gained knowledge that the building was potentially defective because there were cracks in the masonry, or as the trial court determined, several months after this at the latest, by which time the College should have completed an inspection. The College presents scant evidence upon which to base a later date for discovery of the cause of action. It relies solely on the fact that, some time after the inspection, an independent expert read Dow's report and informed the College that Sarabond probably caused the defect. The facts, construed in a light most favorable to the College, support the trial court's conclusion that no genuine issue for trial exists regarding when the College should reasonably have discovered the defects.

## STATUTES OF LIMITATION: APPLICATION

Now that we have established the outside date of accrual of the College's claims, we will apply the statutes of limitation. The College asserted claims for breach of warranty, claims in tort and claims for fraud. The applicable statute of limitations for breach of warranty, 13 Pa.C.S. § 2725, permits an action to be brought within four years from tender of delivery of the goods. The building was completed in 1973. An exception addressing the situation in which the warranty extends to future performance does not apply in this case because there was no express warranty

extending to future performance. *Cucchi v. Rollins Protective Services,* 377 Pa.Super. 9, 546 A.2d 1131 (1988). Further, the tort discovery rule does not apply to breach of warranty actions. *Patton v. Mack Trucks, Inc.,* 360 Pa.Super 1, 519 A.2d 959 (1986). Therefore, the action would have had to have been brought by spring of 1983. We do not reach the issues of standing and status of parties raised by the College. The College's strict liability and failure to warn claims in tort are also time-barred. The statute of limitation for these actions, 42 Pa.C.S. § 5524, sets forth a two-year time period. Therefore, these actions were time-barred after the spring of 1981 at the latest.

 Finally, the College received leave to amend its complaint on December 30, 1985 to bring fraud charges against Dow. Generally a claimant has six years in which to bring suit for fraud claims arising before February, 1983. *Borysowski v. State Farm Mutual Auto Insurance Co.,* 368 Pa.Super. 399, 534 A.2d 496 (1987); 42 Pa.C.S. § 5527. Because the building was substantially completed in 1973, the College would have had to bring fraud claims based upon fraudulent misrepresentation upon sale of Sarabond by 1979. The College asserts that because Dow's concealment prevented it from discovering that Sarabond caused defects, the statute should not have begun to run until the College's claimed date of discovery, or, in the alternative, that Dow should be estopped from asserting a statutes of limitation defense altogether.

If the party committing fraud is also guilty of some acts of concealment or deception which hides from the plaintiff that he has a cause of action, then the statute will run from the time discovery of the alleged fraud is made, or in the exercise of reasonable diligence should have been made. *Turtzo v. Boyer,* 370 Pa. 526, 88 A.2d 884 (1952). The College alleged that Dow's report was a fraudulent misrepresentation that lulled it into believing that it could have no action against Dow. We agree with the trial court that, following Dow's 1979 letter recommending that the College have an independent inspection performed, the College's

discovery of cracks and the knowledge that Dow was being sued elsewhere for damages due to Sarabond, no reasonable person would have relied on Dow's subsequent denial of liability in the report.

We also agree with the trial court that Dow's behavior was not such that the equitable principle of estoppel should preclude it from asserting the statute of limitations. Where by fraud or concealment the defendant causes the plaintiff to relax viligance or deviate from his right of inquiry, the defendant is estopped from invoking the statute of limitations. *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792 (1987). Although mere silence or nondisclosure is not enough to trigger estoppel, the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); Dobbs on Remedies § 2.3 at 42 (1973). Dow's 1979 letter actually served to warn the College, not lull it into complacency, about a possible cause of action. The College was not even aware before receipt of the letter that its building contained Sarabond. Further, the letter suggested that the College have an independent inspection. Following this entire chain of events, it was completely unreasonable for the College to rely on Dow's disclaimer of liability in its later report, and, in fact, this disclaimer of liability cannot even be characterized as concealment. Therefore, we conclude, as did the trial court, that no estoppel principle operates here.

The trial court refuted Dow's assertion in its motion for summary judgment that the statute of repose for construction projects, 42 Pa.C.S. § 5536, bars any action against Dow. We do not address this issue. The purpose of the statute is to bar actions brought beyond twelve years from completion of construction *for personal injuries* resulting from construction defects. *Catanzaro v. Wasco Products, Inc.*, 339 Pa.Super 481, 489 A.2d 262 (1981). The present case does not involve a claim resulting from personal injuries.

The trial court's exhaustive analysis of all aspects of the motion for summary judgment led it to conclude that the College demonstrated an egregious lack of diligence in bringing its cause of action against Dow. No facts were disputed. The nonmoving party, in response to a properly supported motion for summary judgment, must in response "set forth specific facts showing that there is a genuine issue for trial." Pa.R.C.P. 1035(d). The trial court concluded that the College failed to do this. The trial court's grant of Dow's motion for summary judgment was proper. Hence, we affirm the order.

Order affirmed.