574 A.2d 1061

Edward FLAXMAN and John Savarese, Appellants,

v.

Dan BURNETT, Ottaway Newspapers, Inc., William Agriss, Wayne Mazur, John Neff and Marc R. Wolfe.

Superior Court of Pennsylvania.

Submitted Dec. 14, 1989.

Filed May 2, 1990.

Cletus P. Lyman, Philadelphia, for appellants.

Katherine L. Hatton, Philadelphia, for Burnett and Ottaway Newspapers, appellees.

Edmund G. Flynn, Stroudsburg, for Agriss, Mazur and Neff, appellees.

Jeffrey B. Albert, Philadelphia, for Wolfe, appellee.

Before BROSKY, WIEAND and JOHNSON, JJ.

BROSKY, Judge.

This is an appeal from an order which granted appellees' preliminary objections and transferred venue in this action from Philadelphia County to Monroe County.

Appellants, Edward Flaxman and John Savarese, present the following issues for review: (1) whether Monroe County Transit Authority (MCTA) is a local agency; (2) whether the cause of action arose in Philadelphia County; and (3) whether the trial court erred in transferring the action to Monroe County in view of the convenience of the witnesses and parties and allegations of impartiality with respect to the judges, arbitrators and jurors. For the reasons set forth below we affirm the order of the trial court.

This defamation case arises out of appellants' prior employment relationship with MCTA. Appellants were terminated from their positions at MCTA in November 1985. In response, appellants filed suit in the United States District

Court for the Middle District of Pennsylvania and in Monroe County.[1]

The Pocono Record, the local newspaper in Monroe County, published articles regarding appellants' termination and the ensuing litigation, one of which is the subject of this action. The allegedly defamatory column was published on August 7, 1986, and concerned MCTA's decision to initiate legal proceedings to recoup monies owed by Flaxman and Savarese to MCTA.[2] As a result of this particular news report, appellants brought suit in Philadelphia court against appellees who are as follows: the publisher Ottaway Newspapers, Inc., Dan Burnett, the reporter who wrote the story, Marc Wolfe, the solicitor for MCTA, and William Agriss, Wayne Mazur and John Neff, all of whom serve on the board of MCTA. MCTA, itself, is not a party to the instant action.

With the exception of John Neff, who resides in Carbon County, and appellants, who are residents of Florida,[3] all parties are located in Monroe County. As a result, appellees filed preliminary objections alleging that venue in Philadelphia County was improper, or in the alternative, that the action should be transferred to Monroe County pursuant to the doctrine of *forum non conveniens*.

In its opinion granting appellees' request to transfer the action to Monroe County, the trial court concluded that venue was improper in Philadelphia County for the following reasons: (1) appellees were not amenable to suit in Philadelphia County; (2) neither the cause of action nor the transactions giving rise to the cause of action occurred in Philadelphia County; (3) with the exception of Ottaway and Burnett, appellees are employees of MCTA, a Commonwealth agency, and as such, they may only be sued where

1. Although the action before the United States District Court has been resolved, the action in Monroe County is still pending. However, these separate actions are irrelevant to the disposition of the issues before us and will not be discussed.

2. More specifically, the article stated that Flaxman and Savarese embezzled funds from MCTA.

3. See Appellants' Brief at p. 21.

suit could be brought against MCTA; and (4) Ottaway does not regularly conduct business in Philadelphia County. Because the trial court properly transferred this action to Monroe County, we affirm.

■■■■ Before addressing the merits of the issues raised, we must ascertain whether we have jurisdiction to resolve this matter.[4] Although an order granting a change of venue is interlocutory, this court has previously held that an "order transferring ... [venue] is appealable as of right pursuant to Pa.R.A.P. 311(c)." *Vogel v. National Railroad Passenger Corporation*, 370 Pa.Super. 315, 318 n. 3, 536 A.2d 422, 424 n. 3 (1988). Therefore, this action is properly before us.

■■ Pa.R.C.P. 1006(c) is applicable to actions in which multiple defendants are involved, and provides:

An action to enforce a joint or joint and several liability against two or more defendants, except actions in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of Subdivisions (a) or (b).

Consequently, if MCTA is a Commonwealth party, then venue is only proper in those counties in which actions against a Commonwealth party may be brought. 42 Pa.C.S.A. § 8501 defines the term "Commonwealth party" as "[a] Commonwealth agency and any employee thereof but only with respect to an act within the scope of his office or employment." The question we must determine, therefore, is whether MCTA is a Commonwealth agency or a local agency, as asserted by appellants.

---

**4.** With regard to the issue of jurisdiction, we note that pursuant to 42 Pa.C.S.A. § 762(a)(1)(i) and (7), the Commonwealth Court has exclusive appellate jurisdiction of appeals involving tort claims against either a Commonwealth or local agency. However, as none of the parties in this action have raised an objection to the assumption of appellate jurisdiction by this court as required by Pa.R.A.P. 741(a), we will exercise our discretion and decline to transfer the matter to the Commonwealth Court. *See* Pa.R.A.P. 752(a) and *Turner v. Commonwealth, PennDOT,* 352 Pa.Super. 154, 155 n. 1, 507 A.2d 428, 429 n. 1 (1983).

■ The trial court relied on *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270 (1986) in support of its conclusion that MCTA is a Commonwealth agency. However, the trial court's reliance on *Feingold* is misplaced. In *Feingold,* the Pennsylvania Supreme Court relied on the specific language in the Pennsylvania Urban Mass Transportation Law, 55 Pa.S.A. § 600.303 in concluding that SEPTA was a Commonwealth agency. The Urban Mass Transportation Law only applies to metropolitan areas, *see* 55 Pa.S.A. § 600.303, which are defined as "all of the territory within the boundaries of any county of the first class and all other counties located in whole or in part within twenty miles of such first class county." 55 Pa.S.A. § 600.302. Monroe County is a county of the sixth class, *see* 16 Pa.S.A. § 210, and therefore, the Urban Mass Transportation law is inapplicable to MCTA.

We agree with appellants that MCTA is a local agency. In order to arrive at this conclusion, it is necessary to compare the definitions of the terms Local agency and Commonwealth agency. 42 Pa.C.S.A. § 8501 defines a "Local Agency" as "[a] government unit other than the Commonwealth government." However, under 42 Pa.C.S.A. § 102, a "Commonwealth agency" is defined as "[a]ny executive or independent agency." The term "Executive agency" includes "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government," whereas the term "Independent agency" covers "[b]oards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor. . . ." *Id.* Finally, "Commonwealth government" is defined as "[t]he government of the Commonwealth, including the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, *but* the term *does not include any* political subdivision, *municipal or other local*

*authority, or any officer or agency of any such* political subdivision or *local authority.* [Emphasis added.]" *Id.*

This court recently analyzed these definitions in *Northampton County Community College v. Dow Chemical,* 389 Pa.Super. 11, 566 A.2d 591 (1989), in which we held that a community college was not a Commonwealth party. In reaching this conclusion, we determined that "[t]he legislature's classification of Commonwealth parties is unambiguous." *Id.* 389 Pa.Super. at 22, 566 A.2d at 596. Therefore in view of the clear definitions provided by the legislature we are constrained to conclude that MCTA fits squarely within the description of a local agency. Having ascertained that MCTA is a local agency, we must next determine whether venue is proper in Philadelphia County.

Because appellees all possess a different status, different venue provisions must be applied. As discussed above, we found MCTA to be a local agency. Thus, venue is governed by Title 42, Chapter 85, Subchapter C of the Pennsylvania Consolidated Statutes. The preamble to Subchapter C directs that "[a]ctions ... for claims against a local agency may be brought in and only in a county in which the local agency is located or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose."

Appellee Ottaway, however, is a corporation and under Pa.R.C.P. 2179(a), actions against such entities may only be brought in: (1) the county where its registered office or principal place of business is located; (2) a county where it regularly conducts business; (3) the county where the cause of actions arose; or (4) a county where a transaction or occurrence took place out of which the cause of action arose.

Finally, if it is assumed that appellees Burnett, Agriss, Mazur, Neff and Wolfe are sued in their capacity as individuals, then venue is proper under Pa.R.C.P. 1006(a) "only in a county in which [the individual] may be served or in which the cause of action arose or were a transaction or occur-

rence took place out of which the cause of action arose or in any other county authorized by law."

Upon review of these various venue provisions, it is evident that regardless of appellees' status, all of the venue rules would permit appellees to be sued in the county where the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose. Therefore, if it can be shown that the cause of action arose in Philadelphia County, or a transaction or occurrence took place in Philadelphia County, then Philadelphia County would certainly be a county in which venue is proper. As a result, we must determine where a cause of action arises with respect to a defamation action.

■ An essential element of a defamation action is publication. *See* 42 Pa.C.S.A. § 8343(a)(2). The Restatement (Second) of Torts § 577(1) defines publication as "its communication intentionally or by negligent act to one other than the person defamed." Thus, publication occurs whenever a defamatory statement is communicated to another person.

■ In this case, the allegedly defamatory statements made by the board members and solicitor of MCTA were "published" within the meaning of the Restatement definition in Monroe County, because that is the place where the statements were communicated to the news reporter. In addition, a re-publication of the defamatory statements occurred in Monroe County when these statements were written in the article and circulated to the subscribers in Monroe County. *See* Restatement (Second) of Torts § 578 and comments b and d thereto. However if the defamatory article was circulated in other counties, then a re-publication would also occur in such counties.

■ As stated in 42 Pa.C.S.A. § 8343(a), the plaintiff has the burden of proving that a publication occurred. Because appellees have disputed that a publication occurred in Philadelphia, we must review appellants' complaint in order to determine whether the element of publication has

been sufficiently established. In this case, the complaint fails to aver that the Pocono Record was published in Philadelphia County. Paragraph 4 of the Complaint provides that "the *Pocono Record,* a newspaper of general circulation published in Stroudsburg, ha[s] a general circulation throughout Monroe County and other counties in Eastern Pennsylvania." Paragraph 14 further adds that "[t]he article was widely circulated throughout Monroe County, and other counties in Eastern Pennsylvania." It is significant to note that neither of these paragraphs state that the defamatory article was published in Philadelphia County; rather, both paragraphs specifically aver that the newspaper was circulated in Monroe County. Based on the plain language appearing in the complaint, we conclude that appellants have only established that a publication occurred in Monroe County.

Assuming for the sake of argument that venue is proper in Philadelphia County, we believe that the trial court could have also transferred the action to Monroe County pursuant to the doctrine of *forum non conveniens.* While it is true that the trial court did not transfer the case on this basis, it is well settled that "[a]s an appellate court, we are free to affirm an order of the lower court if it is correct for any reason, regardless of the grounds relied upon by the court below." *Klebach v. Mellon Bank, N.A.,* 388 Pa.Super. 203, 211, 565 A.2d 448, 451 (1989). Accordingly, we may affirm the transfer of the case to Monroe County, if we find that litigation in Monroe County would be more convenient for the parties and witnesses.[5]

In reviewing a change of venue made for the convenience of the witnesses and parties, this court has found the following factors to be relevant:

5. We note that the issue of whether the action could have been transferred to Monroe County under the doctrine of *forum non conveniens* is properly before this court because appellees specifically requested such relief in their preliminary objections in the event that the trial court deemed venue in Philadelphia County to be proper. *Cf. Penox Technologies, Inc. v. Foster Medical Corp.,* 376 Pa.Super. 450, 546 A.2d 114 (1988). Moreover, appellants raised this issue on appeal as they contend that it would be more convenient to litigate in Philadelphia County.

(1) the plaintiff's choice of forum should be given significant weight;

(2) the interests of the parties should be considered, including relative ease of access to sources of proof, availability of compulsory process for the attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses ... enforceability of a judgment, and any other problem which affects the ease, celerity or expense of the litigation; and

(3) public interest; litigation should not be piled up in congested centers rather than being handled at its origin [and] jury duty should not be imposed on the people of a community which has no relation to the litigation.

*Brown v. Delaware Valley Transplant Program*, 371 Pa. Super. 583, 586–587, 538 A.2d 889, 891 (1988).

■■■ After consideration of these factors, we conclude that Monroe County is a more convenient forum for the witnesses and parties. First, both appellants now reside in Florida, whereas all of the appellees reside in Monroe County. Thus, while they may be required to travel from Philadelphia to Monroe County, this is not a severe hardship when considering the total distance which appellants must travel in order to reach Pennsylvania. More importantly, all of the potential witnesses and evidence in this case is located in Monroe County. Philadelphia County also has a more congested docket than Monroe County, and therefore, the case will not proceed to judgment as quickly, if a jury trial is necessary. In addition, the people of Philadelphia County, except for the alleged nine subscribers of the Pocono Record who reside in Philadelphia County, have no interest in this litigation, and therefore, they should not be burdened with this case. Finally, because appellants lived and worked in Monroe County, the defamatory article would have had more impact in Monroe County, where appellants would be more easily recognized in the community, as opposed to Philadelphia County, where appellants would be less well-known. Consequently, after balancing the appellants' choice of forum against the difficulties and

expenses imposed on the appellees by forcing them to litigate in Philadelphia County we conclude that Monroe County is a more convenient forum for all of the parties and witnesses.

With regard to the final issue raised on appeal, Pa.R.C.P. 1006(d)(2) directs that "[w]here upon petition and hearing thereon, the court finds that a fair and impartial trial cannot be held in the county for reasons stated of record, the court may order that the action be transferred." Appellants have filed a petition pursuant to Rule 1006(d)(2) with the trial court. However, the court did not address the issues raised in the petition and stated that these matters would be more appropriate for the Monroe County Court to address. We agree. Moreover, we are unable to determine whether appellants will indeed be deprived of a fair and impartial trial as there is no evidence which presently exists in the record to support the averments in appellants' petition. Even if we were to agree with appellants that neutral arbitrators would be difficult to find, this factor alone does not deprive appellants of the opportunity to have a fair and impartial trial, as appellants may request that a judge or jury from another county be assigned to hear the case. Accordingly, we affirm the decision of the trial court transferring this from Philadelphia County to Monroe County.

Order affirmed.

WIEAND, J., files a concurring statement.

WIEAND, Judge, concurring.

I would hold that the trial court properly transferred venue to Monroe County for the convenience of the parties and witnesses. Therefore, I concur in the decision to affirm the order of the trial court.