**Gates v. Angle**

C.P. of Lehigh County, no. 2001-C-2766.

*Steven E. Hoffman,* for plaintiff.
*William J. Taylor Jr.,* for defendant.

BLACK, *J.*, May 16, 2002—The plaintiff, Elmer Gates, seeks to recover compensatory and punitive damages as a result of a defamatory statement allegedly made by the defendant, Ron Angle, to Joseph Carlson, a reporter for *The Express-Times.* Angle's statement was quoted verbatim in the Easton and Bethlehem editions of *The Express-Times,* a daily newspaper circulated in Northampton, Lehigh and Bucks Counties in Pennsylvania, and in Warren and Hunterdon Counties in New Jersey.

Before the court for disposition are Angle's preliminary objections to the complaint on the ground that Lehigh County is an improper venue for this case. For the reasons stated below, we conclude that venue in Lehigh County is proper.

## FACTUAL BACKGROUND

The pertinent facts are derived from admissions in the parties' pleadings; the affidavit of Angle; and the depositions of two employees of *The Express-Times,* Robert F. Rothacker Jr., vice-president of circulation, and Joseph Carlson, a reporter.

Both Gates and Angle reside in Northampton County. Angle has neither a residence nor a place of business in Lehigh County. Angle is a member of Northampton County Council and ran unsuccessfully last year on the Republican ticket for the position of Northampton County Executive against the incumbent Democrat, Glenn Reibman.

Gates is a retired business executive. He is currently affiliated with the Lehigh Valley Economic Development Corporation, a nonprofit corporation that seeks to attract

new businesses to the Lehigh Valley. He has been a frequent contributor to Republican political candidates, but in the Northampton County Executive race last year he supported Angle's opponent, the Democratic candidate, Reibman.

On October 11, 2001, approximately one month before the county election, Angle stated to Carlson in a telephone conversation,

"If Mike Fisher [attorney general of Pennsylvania] wasn't being stifled by Elmer Gates, Glenn Reibman would probably be on trial right now."

When this telephone conversation occurred, Angle was at his home in Northampton County, and Carlson was at his office in Northampton County.

The following day *The Express-Times* printed an article entitled "Mud flying in Reibman, Angle race." The article stated in pertinent part:

"Angle, a Republican, said Lehigh Valley businessman Elmer Gates asked Fisher to sit on the investigation into former political consultant Michael Solomon.

" 'If Mike Fisher wasn't being stifled by Elmer Gates, Glenn Reibman would probably be on trial right now,' Angle said."

*The Express-Times* is the successor to two newspapers, *The Easton Express* and the *Bethlehem Globe-Times*. The newspaper was originally called *The Easton Express* and was later re-named *The Express*. In 1993, its publisher purchased the *Bethlehem Globe-Times,* the only daily newspaper headquartered in Bethlehem. The name of the newspaper was then changed to its current name, *The Express-Times*. The newspaper is published

in three editions, referred to as the Easton, Bethlehem and Warren (New Jersey) editions. The article referred to above appeared in both the Easton and Bethlehem editions.[1]

The City of Bethlehem is located partially in Northampton County and partially in Lehigh County. This fact is common knowledge, especially to candidates for a county political office in those counties.

On October 12, 2001, *The Express-Times* had a total circulation of 52,359. The circulation in Lehigh County was 901 copies, of which 465 copies were circulated in Allentown and 436 copies in the Lehigh County portion of Bethlehem.

## DISCUSSION

Venue is governed by Pennsylvania Rule of Civil Procedure 1006, which states in pertinent part:

"(a) Except as otherwise provided by subdivisions (b) and (c) of this rule, an action against an individual may be brought in and only in a county in which the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law."

It is well established that a plaintiff's choice of venue must be given great weight, and a defendant objecting to venue has the burden of proving that his objections to venue are valid. *Gale v. Mercy Catholic Medical Center Eastwick Inc., Fitzgerald Mercy Div.,* 698 A.2d 647, 651

1. The parties' counsel stipulated to this fact at oral argument.

(Pa. Super. 1997), *allocatur denied,* 552 Pa. 693, 716 A.2d 1249 (1998).

In this case the defendant, Angle, does not have a residence or place of business in Lehigh County. Therefore, there is no basis on which he could be served in this county. Accordingly, venue in Lehigh County is proper only if at least one of the causes of action asserted by Gates in his complaint arose in this county or if a transaction or occurrence took place in this county out of which one of these causes of action arose.

A cause of action for defamation arises when the defamatory statement is published, *i.e.,* when the statement is communicated to a person other than the person defamed. See *Flaxman v. Burnett,* 393 Pa. Super. 520, 529, 574 A.2d 1061, 1066 (1990); Restatement (Second) of Torts §577(1). Since it is the publication of the defamatory statement that gives rise to the tort claim, a cause of action for defamation arises at both the place from which the defamatory statement is communicated and the place where the communication is received.

Count II of the complaint, for slander, is based on an oral statement allegedly made by Angle to reporter Carlson. The complaint alleges that Angle made this statement at a campaign rally in Lehigh County. However, the deposition of Carlson and Angle's affidavit are both to the contrary. According to Carlson and Angle, the statement was made in a telephone conversation, and each of them states that he was in Northampton County when this conversation took place. Gates has produced no evidence that Angle's statement was made or received at a location in Lehigh County. Accordingly, the slander count cannot support venue in Lehigh County.

We reach a different conclusion, though, with respect to the defamation claim[2] in Count I. This is sufficient to sustain venue in Lehigh County for the entire case. In Count I Gates alleges that Angle caused the defamatory statement at issue to be published in *The Express-Times* on October 12, 2001. *The Express-Times* had a circulation in Lehigh County on that date of 901 copies, of which 465 were circulated in Allentown and 436 in the Lehigh County portion of Bethlehem.

When a newspaper publishes a defamatory statement previously made by someone else, the newspaper publication is technically a *republication* of the earlier statement. The author of the earlier statement is legally responsible for the newspaper's republication only if he intended or should have reasonably foreseen that the newspaper would republish his statement. Restatement (Second) of Torts §568 cmt. f (1976). If the newspaper republication was not intended or reasonably foreseen, the author of the earlier statement would not be legally responsible for the newspaper's action. The plaintiff's defamation claim in that circumstance would arise only from the original utterance, not from the later newspaper republication.

Consequently, the mere fact that some copies of *The Express-Times* containing Angle's statement were circulated in Lehigh County does not automatically establish Lehigh County as a county in which Gates' Count I cause

---

2. "Defamation" and "slander" are not mutually exclusive terms. Defamation can take either of two forms—slander if the defamatory statement is made orally, or libel if the defamatory statement is made in writing or is foreseeably reduced to writing by a third party. Restatement (Second) of Torts §577 cmt. g (1976). Thus, the claim in Count I is more precisely termed a libel claim.

of action arose. For a cause of action to arise in Lehigh County from the republication of a defamatory statement, it is necessary that the republication *in Lehigh County* be intended or reasonably foreseeable by the defendant. Hence, the circulation of Angle's statement by *The Express-Times* in Lehigh County is actionable against Angle only if he knew or had reason to know that copies of *The Express-Times* containing his statement would be circulated in this county.[3]

In this case the record discloses that Angle made the statement at issue to a news reporter for *The Express-Times* in the midst of a heated political campaign for the

---

3. Gates' argument that venue should lie in Lehigh County automatically because some copies of *The Express-Times* were circulated here is much too broad a proposition. If someone had mailed a copy of *The Express-Times* article to a friend in Alaska, a republication of the defamatory statement would have occurred in Alaska. But this republication does not mean that a cause of action for libel would arise in Alaska. Cause-of-action venue exists only in the jurisdiction where the cause of action arose. Unless republication in Alaska was intended or reasonably foreseeable by Angle, no cause of action would arise there.

We also do not find convincing Gates' argument that venue can be sustained in Lehigh County because of his civic and business contacts here. The case of *Gaetano v. Sharon Herald Company,* 426 Pa. 179, 231 A.2d 753 (1967), on which his counsel relies, does not support his position for two reasons. First, in *Gaetano* the newspaper itself was a defendant. Obviously, the defendant newspaper knew where its circulation was. Thus, the circulation of the defamatory statement in the forum county was intentional on the part of the newspaper defendant and gave rise to a cause of action against it in that forum. Second, in *Gaetano* the plaintiff himself resided in the county where suit was brought. Here Gates resides in Northampton County, and on the record produced for the court his only connection with Lehigh County is his affiliation with the Lehigh Valley Economic Development Corporation. We are not permitted to take judicial notice of other connections he may have with Lehigh County.

office of Northampton County Executive. The statement alleged criminal misconduct on the part of a prominent supporter of the candidate opposing Angle for this office. The statement was obviously newsworthy, and on the record produced to date a jury could find that Angle should have foreseen that *The Express-Times* would republish it.

Angle claims in his affidavit that he did not personally know that *The Express-Times* circulated any copies in Lehigh County. He argues, therefore, that whether or not he should have foreseen the republication of his statement by *The Express-Times,* he cannot be held accountable for the newspaper's circulation of his statement *in Lehigh County.* However, regardless of Angle's subjective claim of ignorance, the appropriate test has an objective component: Did Angle have reason to know that *The Express-Times* would be circulating copies of its October 12, 2001 edition in Lehigh County?

Clearly, every candidate for county office in Lehigh or Northampton County must be cognizant of the fact that the City of Bethlehem is partially in each of these counties. It is also common knowledge locally that Bethlehem's only daily newspaper, *The Bethlehem Globe-Times,* was acquired by *The Easton Express,* which later became *The Express-Times.* Given those facts, Angle had reason to know that *The Express-Times* had Lehigh County subscribers and that copies of *The Express-Times* would therefore be circulated in Lehigh County. Accordingly, Gates' cause of action in Count I arose in part in Lehigh County, and venue is proper here.

Although many more copies of *The Express-Times* were circulated in Northampton County, this does not

affect the propriety of venue in Lehigh County. Angle has not petitioned for a change of venue for the convenience of the parties and witnesses under Pennsylvania Rule of Civil Procedure 1006(d). The only issue presented by Angle's preliminary objections is whether venue is proper in Lehigh County under Rule 1006(a). For the reasons stated above, we find that venue is proper in this county.

At common law, every sale of a copy of a newspaper was a separate and distinct publication giving rise to a separate cause of action. See *Gaetano v. Sharon Herald Company,* 426 Pa. 179, 231 A.2d 753 (1967). To protect publishers from a multitude of suits in different jurisdictions for what is in essence a single tortious act, Pennsylvania has adopted the Uniform Single Publication Act, which provides as follows:

"No person shall have more than one cause of action for damages for libel or slander, or invasion of privacy, or any other tort founded upon any single publication, or exhibition, or utterance, such as any one edition of a newspaper or book, or magazine, or any one presentation to an audience, or any one broadcast over radio or television, or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." 42 Pa. C.S. §8341(b).

As a result of this statute, Gates may bring only one action against Angle for his statement in the October 12, 2001 edition of *The Express-Times.* But Gates may recover in that single action all damages suffered in all jurisdictions. Thus, Gates may recover in this Lehigh County case, if he prevails, for harm to his reputation in

whatever locales such harm may have occurred as a result of the circulation of the October 12, 2001 edition of *The Express-Times.*

### ORDER

Now May 16, 2002, upon consideration of defendant's preliminary objections to the complaint, after review of the parties' briefs and oral argument, for the reasons set forth in the accompanying opinion, it is ordered that the preliminary objections be and hereby are overruled.

It is further ordered defendant shall file an answer to the complaint within 20 days from the date of this order.