

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-1997

# Carnegie Mellon Univ v. Schwartz

Precedential or Non-Precedential:

Docket 95-3440

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Carnegie Mellon Univ v. Schwartz" (1997). *1997 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 95-3440

———————————

CARNEGIE MELLON UNIVERSITY,

Appellant.

v.

ANSEL M. SCHWARTZ, ESQUIRE;
COHEN & GRIGSBY, P.C.

UNITED STATES OF AMERICA,

Third-party Defendant

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 92-cv-01554)

———————————

Argued on March 26, 1996

Before: SLOVITER, Chief Judge, GREENBERG and ROTH,
Circuit Judges

(Opinion Filed January 28, 1997)

———————————

Walter P. DeForest, Esq. (Argued)
Jacqueline A. Koscelnik, Esq.
DeForest & Koscelnik
3000 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

William S. Schweers, Jr., Esq.
Harrington, Schweers, Dattilo & McClelland, P. C.
100 Ross Street
Pittsburgh, PA 15219

       Attorneys for Appellant

Vincent J. Grogan, Esq. (Argued)
Richard D. Kalson, Esq.
Grogan, Graffam, McGinley & Lucchino, P.C.
Three Gateway Center, 22nd Floor
Pittsburgh, PA  15222

       Attorneys for Appellee Ansel M. Schwartz

Frank W. Hunger, Esq.
Assistant Attorney General
Frederick W. Thieman, Esq.
United States Attorney
Frank A. Rosenfeld, Esq. (Argued)
William Kanter, Esq.
United States Attorneys Office
Appellate Staff, Civil Division
Room 7124
Department of Justice
Washington, D.C.  20530-0001

Amy R. Hay, Esq.
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219

       Attorneys for Appellee United States of America

Patrick G. Barry, Esq.
Manion, McDonough & Lucas
600 Grant Street
Suite 882
Pittsburgh, PA 15219

       Attorney for Appellee Cohen & Grigsby

—————————————

OPINION OF THE COURT

—————————————

ROTH, Circuit Judge:

Carnegie Mellon University (CMU) brings this action for professional negligence against Cohen & Grigsby, P.C. (C&G) and a former C&G associate, Ansel M. Schwartz, alleging that they were negligent in their handling of two CMU patents. Schwartz joined the United States as a third-party defendant, alleging that the United States Patent and Trademark Office (PTO) is responsible for any damages suffered by CMU. The district court granted summary judgment against CMU on the ground that CMU could not have suffered any actual loss as a result of Schwartz's alleged professional negligence. Because we believe that the district court's conclusion that CMU suffered no actual loss is premature, we will vacate the district court's order and remand the case for further proceedings consistent with this opinion.

The district court had jurisdiction pursuant to 28 U.S.C. § 1346(b) because this is a civil action sounding in tort in which the United States is a defendant. We have jurisdiction of the district court's summary judgment order. 28 U.S.C. §§ 1291, 1295(a)(2).

**I**

CMU commenced this action against C&G, a professional corporation rendering legal services, and Ansel M. Schwartz, a former C&G associate, for alleged professional negligence in connection with their handling of two patents owned by CMU. The

3

crux of CMU's complaint is that Schwartz erroneously and negligently disclaimed a CMU patent and that the error was not corrected for fifteen months after the PTO published notice of the disclaimer in its Official Gazette. CMU argues that during these fifteen months, third parties who relied on the published disclaimer might have acquired intervening rights to the patent and that the disclaimer diminished the value of CMU's patent. CMU argues that Schwartz and C&G are liable to it for any damages that CMU suffers as a result of their alleged professional negligence. Schwartz argues that the PTO negligently published notice of a statutory disclaimer when he had filed only a terminal disclaimer to obviate a double patenting rejection.

The district court adopted the Supplemental Report and Recommendation of the magistrate judge, which granted Schwartz's and C&G's motions for summary judgment and also granted the United States's motion to dismiss or, in the alternative, for summary judgment. Order, No. 92-1554 (July 7, 1995) (citing Supplemental Report and Recommendation, No. 92-1554 (May 4, 1995) (hereinafter Supplemental Report)). On appeal, we view all facts in the light most favorable to CMU, the non-moving party, and give CMU the benefit of all reasonable inferences from those facts. Travitz v. Northeast Dept. ILGWU Health and Welfare Fund, 13 F.3d 704, 708 (3d Cir. 1994), cert. denied, 114 S. Ct. 2165 (1994). We apply the same legal test that the district court should have applied initially, and we have plenary review of the

4

legal issues underlying the district court's order granting summary judgment. Id.

CMU avers that it retained C&G and Schwartz to prosecute and transact all business related to United States Patent No. 4,767,708, issued August 30, 1988 (708 Patent), and related United States Continuation Patent Application Serial Number 07/117,279, filed November 5, 1987 (279 Application). After the PTO entered an obviousness-type double patenting rejection in connection with the 279 Application, Schwartz prepared a terminal disclaimer to obviate the double patenting rejection. See 37 C.F.R. 1.78(d).

According to CMU, Schwartz inadvertently placed the serial number and filing date of the 708 Patent (rather than the 279 Application) on the disclaimer and mailed it to the PTO on March 15, 1990. In May 1990 the PTO advised Schwartz that no terminal disclaimer had been filed for the 279 Application, whereupon Schwartz refiled the incorrect disclaimer.[1] Although the PTO published a notice of disclaimer pertaining to the 708 Patent on May 29, 1990, Schwartz did not note that the patent had been disclaimed. After Schwartz was notified again on July 23, 1990, that a terminal disclaimer was needed for the 279 Application and that the previously filed disclaimer had gone to another case,[2] Schwartz made no effort to determine the status of

------

[1] Schwartz denies that he resubmitted an incorrect disclaimer.

[2] Schwartz denies receiving such notification.

5

the 708 Patent or to correct the disclaimer.  Finally, on November 23, 1990, Schwartz filed a correct terminal disclaimer form for the 279 Application, and the PTO granted the disclaimer.

On July 25, 1991, Schwartz learned for the first time that more than a year earlier, the PTO had published a statutory disclaimer for the remaining term of the 708 Patent.  Upon learning of the statutory disclaimer, Schwartz immediately filed a Petition to Expunge with the Commissioner of Patents and Trademarks.  On September 10, 1991 (more than fifteen months after the disclaimer of the 708 Patent was originally published on May 29, 1990), the PTO published an Erratum in the Official Gazette, which stated that "all references to [the 708 Patent] should be deleted as the patent should not have been disclaimed."  Supplemental Report at 4 n.2.  On December 5, 1991, the PTO directed that the erratum be attached to all soft copies of the 708 Patent furnished by the PTO.

As a result of the mistaken disclaimer, CMU filed this action for professional negligence against Schwartz and C&G.  In his third party complaint against the United States, Schwartz contends that the PTO negligently processed a statutory disclaimer, see 35 U.S.C. § 253; 37 C.F.R. § 1.321(a), in response to his request for a terminal disclaimer.  He asserts that the PTO is jointly liable to the CMU or liable directly to him for all of CMU's alleged damages.

In their first motion for summary judgment, appellees,

6

Schwartz, C&G, and the United States argued that publication of the erratum operated retroactively to cure the mistaken disclaimer. They argued, therefore, that even if there were potential infringers of the 708 Patent or the 270 Patent,[3] CMU could have suffered no damages as a result of the disclaimer because no legitimate intervening rights (rights arising between publication of the disclaimer and publication of the erratum) could be asserted by individuals infringing the patent. On February 7, 1994, the district court denied this first motion for summary judgment based upon the magistrate judge's conclusion that it was unclear whether the erratum would operate retroactively so as to eliminate intervening rights. Supplemental Report at 5 (citing 1993 Report). The court reasoned that to the extent that third parties might have derived intervening rights from reasonable reliance on the disclaimer, CMU might have a viable claim for damages against appellees.[4]

After a settlement conference, the magistrate judge ordered CMU to file infringement lawsuits against any alleged infringers of its patents. CMU thereafter filed a claim for infringement of the 708 Patent and the 270 Patent. That infringement action is currently pending in the United States

_____

[3] The 270 Patent was the result of the 279 Application.

[4] Prior to publication of the erratum, Schwartz had written an opinion letter to CMU identifying several infringers of the 279 Application and several potential infringers of the 708 Patent. Supplemental Report at 5.

District Court for the Northern District of California. CMU notes that the defendants' answers in that action preserve their right to raise as an affirmative defense intervening rights allegedly acquired during the apparent lapse in the 708 and 270 Patents. Thus, CMU argues that summary judgment is inappropriate in this case. CMU contends that it might still suffer damages as a result of Schwartz's alleged negligence if defendants in CMU's infringement action successfully assert their reliance on the published disclaimer as a defense to liability for infringement.

In renewing their motions for summary judgment in 1995, appellees again argued that the erratum had retroactive effect and that it therefore eliminated any intervening rights that might have been acquired by infringers. Appellees maintained that the erratum was published in lieu of a certificate of correction and that it was equivalent thereto. Supplemental Report at 6. In support of these contentions, appellees submitted an affidavit from Jeffrey V. Nase, Director of the PTO's Office of Petitions. Id. CMU countered the Nase affidavit with an affidavit from Donald W. Banner, former United States Commissioner of Patents and Trademarks, which stated that the sale value of the 708 Patent had been diminished by the disclaimer, issuance of the erratum notwithstanding. The magistrate judge found that the retroactive legal effect of the erratum was unclear and recommended again in his 1995 Report and Recommendation that appellees' motions for summary judgment be

8

denied.  App. at 71, 75-79.

Subsequent to the magistrate judge's 1995 Report, the PTO issued a certificate of correction to the 708 Patent, which it published in the Official Gazette on April 18, 1995.  Nase represented by letter that "[t]he Certificate corrects any residual error in [the 708 Patent] . . . that may not have been corrected by the Erratum . . .."  Supplemental Report at 7.  In light of the issuance of the certificate of correction, the district court remanded the case to the magistrate judge for further consideration.  The magistrate judge ruled that

> when a Certificate of Correction is issued to correct a patent without changing the scope of its claim, as here, "the correction is given retroactive application in order that intervening rights may not be alleged."  Eagle Iron Works v. McLanahan Corporation, 429 F.2d 1375, 1383 (3d Cir. 1970).  Since issuance of the Certificate has corrected the improper disclaimer of the 708 Patent, and such correction applies retroactively, no intervening rights, nor damages, may be asserted by CMU.

Id.

Thus the magistrate judge concluded that the certificate of correction foreclosed any possibility that an alleged infringer of the patents could assert intervening rights based on the disclaimer.  He therefore recommended in his Supplemental Report that the district court grant summary judgment to appellees.  Id. at 7-8.  The district court granted the motions for summary judgment and adopted the magistrate judge's Supplemental Report as the court's opinion.  Order, Civil Action No. 92-1554 (July 7, 1995).

9

CMU brought this action for professional negligence, claiming that Schwartz and/or C&G is liable to CMU for any damages that CMU sustains as a result of the errant disclaimer filed by Schwartz. Under Pennsylvania law, an action for professional negligence requires proof of actual loss. Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58, 68 (1989). "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm––not yet realized––does not suffice to create a cause of action for negligence." Id. (citing Duke & Co. v. Anderson, 275 Pa. Super. 65, 73-74, 418 A.2d 613, 617 (1980)). Because it concluded that Schwartz's alleged negligence could not cause CMU actual damages, the district court granted summary judgment to appellees.

According to the district court, the certificate of correction precludes any possibility that alleged infringers of the 708 and 270 Patents acquired valid intervening rights in the fifteen months between the publication of the disclaimer and the publication of the erratum. If the certificate of correction precludes any third-party intervening rights in the patents, the court reasoned, CMU cannot prevail on its negligence claim because the allegedly negligent disclaimer could cause CMU no damages. Thus, the district court's holding is premised on the conclusion that under any factual scenario, alleged patent infringers will not have valid defenses to CMU's claims for

10

infringement based upon Schwartz's allegedly negligent disclaimer.

We are not so confident in the broad ameliorative powers of the certificate of correction. The legal effect of the PTO's certificate of correction on third-party intervening rights turns on a number of difficult issues, many of which were not raised in the district court. These include the question of whether the certificate of correction changed the scope of the 708 Patent from what it was immediately prior to the issuance of the certification of correction. In order to render a definitive ruling that would bar intervening rights for all potential third parties, we would have to resolve difficult questions of first impression involving the proper construction of 35 U.S.C. §§ 254 and 255--the statutes that authorize and define certificates of correction. Furthermore, we would have to consider the implications of Eagle Iron Works v. McLanahan Corp., 429 F.2d 1375 (3d Cir. 1970), concerning the retroactive effect of certificates of correction, as well as fundamental principles of patent law. Thus, although we have no concrete infringement action before us, we would need to fashion a broad rule that addresses important issues of first impression regarding certificates of correction. We would then have to determine how the rule would apply to a large, hypothetical class of alleged patent infringers, who are not currently before this court.

We decline to decide these difficult questions in a

11

factual vacuum. CMU's patent infringement case is currently proceeding in the Northern District of California, and that court will likely decide the legal effect of the certificate of correction in the context of an actual patent infringement action. We cannot confidently predict that the certificate of correction will shield CMU from an "actual loss" in that case. Moreover, even if we were to render a definitive holding regarding the effect of the certificate of correction on all intervening rights, we could not ensure that a district court sitting in the Ninth Circuit would find our reasoning persuasive.

Under these circumstances, we believe it best to hold this negligence action in abeyance until we can determine whether CMU suffered an "actual loss" as a result of intervening rights arising from the disclaimer. We will, therefore, vacate the district court's order granting summary judgment to the defendants and dismissing the complaint against the third party defendant, and we will remand the case to the district court with instructions to proceed in a manner not inconsistent with this opinion. We recommend that the court wait for an outcome in the California infringement action and in any other relevant infringement actions currently pending before it rules on the professional negligence claim against Schwartz and C&G and the crossclaim against the United States. In coming to the above conclusion, we are certainly cognizant of the fact that appellees are entitled to a final disposition of the charges against them.

12

This ruling should not be used to forestall prompt resolution of the negligence claim once the issue of actual loss is clarified.[5]

---

[5] In this regard, we consider it to be CMU's obligation to identify any other potential infringers and to take appropriate action against them in order to preclude further prolongation of the present litigation.