Willie **FOXWORTH**, a minor, by his parent and natural guardian Muriel **COLLINS**, Plaintiff,

v.

**CHICHESTER SCHOOL DISTRICT,** et al., Defendants.

No. Civ.A. 96–6039.

United States District Court, E.D. Pennsylvania.

Feb. 17, 1999.

Rosemarie Rhodes, Phila., PA, for plaintiff.

Michael I. Levin, Huntingdon Valley, PA, for defendants.

### MEMORANDUM

REED, District Judge.

Currently before the Court is the motion of defendant Meadow Wood Hospital for summary judgment pursuant to Fed.R.Civ.P. 56 and sanctions pursuant to Fed.R.Civ.P. 11 (Document No. 63), the response of Willie

Foxworth ("Foxworth") and the reply thereto. Foxworth's defamation claim is based on allegations that his medical records contained false and defamatory information and were published to various school officials and his former attorney without his permission. For the reasons set forth below, I will grant the motion for summary judgment and deny the motion for sanctions.

## I. PROCEDURAL HISTORY

Muriel Collins is the natural guardian and mother of plaintiff Willie Foxworth ("Foxworth"), a minor. Initially, both Muriel Collins (in her own right) and Willie Foxworth filed a complaint on September 3, 1996 and filed an Amended Complaint on November 8, 1996 against the Chichester School District, Chichester School Board, Philip Voshell (Principal), Salvatore Illuzzi (Superintendent), Samuel Ferrante (Assistant Superintendent), and Cynthia Bottomley (Teacher) (collectively referred to as "School Defendants") as well as Upper Chichester Township and Meadow Wood Hospital. In an Order dated July 18, 1997, this Court granted the motion to dismiss of School Defendants on the grounds that the Amended Complaint was vague and failed to specify which particular allegation violated which legal theory and to identify relevant material elements for a cause of action. In its July 18th Order, this Court gave specific guidance to plaintiffs regarding the legal requirements for pleading these claims. This Court also granted plaintiffs leave to file an amended complaint to correct these deficiencies.

On August 4, 1997, plaintiffs filed a timely Second Amended Complaint. And, soon thereafter, School Defendants filed a motion to dismiss. In an Order dated June 29, 1998, this Court granted the motion of the School Defendants, dismissing the federal question claims against them with prejudice and the state law claims against them without prejudice. This Court also dismissed all claims by Muriel Collins in her own right and ordered that all references to "Muriel Collins, Individually and in Her Own Right" be removed from the caption. Defendants Upper Chichester Township and Meadow Wood Hospital did not join in the motion to dismiss.

## II. BACKGROUND

The following summary is based on the evidence of record viewed in the light most favorable to plaintiff Willie Foxworth, the nonmoving party, as required when considering a motion for summary judgment. *See Carnegie Mellon Univ. v. Schwartz*, 105 F.3d 863, 865 (3d Cir.1997). Foxworth is a young African–American male student who appears to be experiencing significant, if not severe, behavioral and academic problems in his school, with teachers, with classmates, and with classes. In or around the Winter and Spring of 1994, Foxworth's mother and guardian, Muriel Collins ("Collins") became concerned about his behavior and she sought out an adolescent counseling program.

On April 11, 1994, at the request of Collins, Foxworth was admitted to Meadow Wood Hospital. Meadow Wood is a self-described mental healthcare facility located in New Castle, Delaware which specializes in the treatment and counseling of adolescents with psychological and/or psychiatric problems. The hospital provides a multi-faceted staff of physicians, therapists, counselors, nurses, and social workers for both outpatient and inpatient treatment of children which includes services for family and group therapy.

During the course of his hospitalization at Meadow Wood (from April 11, 1994 to May 9, 1994), Foxworth was under the primary care of Dr. Ashley Angert, a psychiatrist, and was seen by numerous mental healthcare professionals in both private and group therapy. Foxworth received a comprehensive psychological testing assessment by Dr. Philip Langsdorf. During his time at Meadow Wood, a hospital chart was maintained on Foxworth in which doctors and nurses recorded information regarding Foxworth's past psychological and behavioral history, his current problems and treatment progress.

Specifically, the chart refers to an incident in which Foxworth set his house on fire when he was six, a history of theft from his home, fights in school, fights with his siblings, and episodes of being beaten by his mother and stepfather. His current history included stealing, hiding knives, failing in school, auditory and visual hallucinations, ideation of

harm to others as well as himself and a perception of being uncared for in his family which manifested in particular anger towards his mother and a fear that she may in fact see his records. It is the substance of these findings, notations and medical conclusions which Foxworth alleges are false and defamatory.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Meadow Wood has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. *Defamation*[1]

■ An essential element of a defamation action is publication. *Bickling v. Kent General Hospital, Inc.*, 872 F.Supp. 1299, 1307 (D.Del.1994); *Flaxman v. Burnett*, 393 Pa.Super. 520, 574 A.2d 1061, 1066 (1990). Publication is the communication, either intentionally or by negligent act, of the alleged defamatory statement to a third party or at least one person other than the person defamed. RESTATEMENT (SECOND) OF TORTS, § 577. The term publication is a technical term and does not in any sense refer to printing or mass communication; rather it refers to any form of defamatory communication to a third party. *Id.*

■ Foxworth claims that his medical records from Meadow Wood contained defamatory statements and that Meadow Wood released his medical history or information contained therein, to the Chichester School District and/or employees and to one of his former attorneys, Maureen Repetto, thereby publishing defamatory statements.[2] With re-

---

**1.** In a diversity case such as this one, this Court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a flexible choice of law methodology which combines contacts analysis and interest analysis. *Carrick v. Zurich–American Ins. Group*, 14 F.3d 907, 909–10 (3d Cir.1994); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). Although Meadow Woods argues that Pennsylvania's one year statute of limitations applies, the parties do not disagree that the Court should apply the substantive law of Delaware. The issue has not been briefed or argued, however, and without additional information the Court is limited in its analysis. The Court will, therefore, reserve final decision on the choice of law. Nevertheless, based on the information before it, the Court will apply the substantive elements of defamation according to the law of Delaware in deciding this motion. It should be noted that for purposes of this motion the relevant substantive elements of the tort are the same in Pennsylvania and Delaware.

**2.** Foxworth argues that the statement that he set his home on fire is defamatory because it was an accident, not because it is untrue. (Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, ("Plt.Mem.") at 3; deposition of Willie Foxworth, pps. 133–34). He also argues that the statement about fighting with his siblings is misleading because it implies physical fights; he only fought verbally with his siblings. (Plt. Mem. at 3; deposition of Willie Foxworth, pps. 136–38). He also asserts that he was never beaten by his mother or father, although in his deposition he admitted that he told the staff at Meadow Wood that his father had beaten him with a cord.

spect to the School Defendants, each has been deposed and testified that at no time did they ever receive a copy or any portion of the records from Meadow Wood or learn of any information from Meadow Wood personnel regarding Foxworth. (Memorandum of Law in Support of Motion for Summary Judgment of Defendant, Meadow Wood Hospital, ("Def.Mem.") Exh. D, deposition excerpts of Philip Voshell, pps. 206–207; Cynthia Bottomley, pps. 108–109; Dr. Ferrante, pps. 123–124; Salvatore Illuzzi, pg. 81). Other than the statements by Collins during her deposition that she believed "all of them have knowledge of [the records] or have been told some parts of the records" and that the School Defendants all lied in their depositions, there is no evidence of publication. (Def.Mem, Exh C, deposition of Muriel Collins, July 14, 1997, p. 525; Exh. E, pps. 587–588). Such speculation cannot carry Foxworth's burden on summary judgment.

Foxworth further asserts that Meadow Wood released records to Maureen Repetto, one of several attorneys who represented Foxworth in a juvenile hearing relating to an incident on a school trip in which Foxworth was accused of sexual harassment and exposing himself to a female student. Foxworth contends that Ms. Repetto made statements in court indicating knowledge of Foxworth's home life, the source of which must have been derived from the Meadow Wood Hospital records.

The evidence does not bear out Foxworth's allegations. During her representation of Foxworth, Ms. Repetto stated in open court on August 16, 1996 that Meadow Wood never disclosed to her the records of Foxworth. She stated:

> I am aware that Willie Foxworth was submitted into a psychological treatment center. I did request of this mother that the records be released. She has refused that the records be released and I want that made part of the record. They won't be released to me or to Upper Chichester.

(Def.MemExh. F, Notes of Testimony, August 16, 1996, pg. 17). At her deposition, Ms. Repetto testified that she learned of the difficulties Foxworth was having at home from speaking to police officers who approached her and advised her that Foxworth had made a number of 911 calls about his stepfather abusing him. (Def.MemExh. H, deposition of Maureen Repetto, pg. 38–40). At her deposition, Ms. Repetto further testified that she had never seen the records from Meadow Wood, never spoke to anyone from Meadow Wood about the content of the records and never learned of the content of those records.[3] (Def.Mem.Exh. G, deposition of Maureen Repetto, pps. 54–55).

---

(Deposition of Willie Foxworth, pg. 135). Similarly, he admitted telling the staff that he had hallucinations about a clown running around his room and that his parents favored his siblings. (*Id.* at 138–39). Interestingly, when questioned whether he had read the report, Foxworth could not remember and stated that he had read a paragraph here and there. (*Id.* at 213–15). Nevertheless, for purposes of this motion, I will assume without deciding that at least some of the statements are defamatory, to wit: that his current history included stealing, hiding knives and ideation of harm to himself and others.

**3.** Foxworth argues nevertheless that Repetto must have seen the records because she knew about them and made statements which he contends could only have been made after seeing the records. With respect to how Ms. Repetto knew of the records, she testified that she first learned that Foxworth had been hospitalized at Meadow Wood when "it was yelled out in court by Muriel [Collins]." (*Id.* at pg. 54). She then clarified her statement: "If I can go back to one of your questions … about how I learned about Meadow Wood. I can't disclose my informant on the

Meadow Wood records. I did become aware of Meadow Wood though another source, aside from Muriel Collins yelling in court." (*Id.*). Foxworth contends that a stray reference to an informant when clarifying how she learned the Foxworth had been hospitalized at Meadow Wood is evidence that the records were published to Ms. Repetto. Any and every possible inference that can be drawn from Ms. Repetto's reference to an informant, however, cannot overcome her unequivocal denial that she had never seen the records from Meadow Wood or ever spoken to anyone from Meadow Wood about the content of the records. (Def.MemExh. G, deposition of Maureen Repetto, pps. 54–55). Moreover, Ms. Repetto was ordered to make available all attorney's time sheets, records, documentation and notes of conversations with psychologists, psychiatrists or other medical employees, identifying the person and the date of the conversation(s) held during Ms. Repetto's legal representation of Foxworth; yet there is no evidence of publication. *See* Order of September 12, 1997 (Document No. 42). Merely colorable or insignificantly probative evidence cannot defeat a proper motion for summary judgment.

No doubt Foxworth and his mother believe that Meadow Wood published the records to Ms. Repetto. However, in the face of Ms. Repetto's unequivocal denial that she had ever seen the records or ever talked to anyone from Meadow Wood about the records, there is simply nothing in the record to support Foxworth's allegation. Foxworth cannot defeat a motion for summary judgment with bare assertions, conclusory allegations, or suspicions.

### B. *Motion of Rule 11 Sanctions*

■ Meadow Wood argues that this Court should impose sanctions under Federal Rule of Civil Procedure 11 because there was a lack of factual support for Foxworth's claim. The Court recognizes, however, that the evidentiary support for publication was legitimately unknown at the time of filing because it depended largely upon information known only to Meadow Wood or the School Defendants and could only be found through the discovery process. While Meadow Wood believes that discovery did not develop the facts in Foxworth's favor, that does not necessarily result in the imposition of sanctions. *Ass'n of Minority Contractors & Suppliers, "AM-CAS," Inc. v. Halliday Properties, Inc.*, 1998 WL 480835, at *6 (E.D.Pa. Aug.13, 1998). Although Foxworth has failed to carry his burden on summary judgment, I find that sanctions are unwarranted.

### V. CONCLUSION

For the foregoing reasons, I will grant the motion of Meadow Wood Hospital for summary judgment and deny its motion for sanctions. An appropriate Order follows.