J-A09042-19

2019 PA Super 166

| JOY M. FOX | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| STACEY SMITH, DREW J. BAUM, GINAMARIE ELLIS, THERESA AGOSTINELLI, STEVE COCOZZA, ELLEN LUONGO, STEVEN LUONGO, MARYANN D. FURLONG, RICHARD B. KERNS, WILLIAM PASCALE, REPUBLICAN COMMITTEE OF CHESTER HEIGHTS AND COMMITTEE FOR THE FUTURE OF CHESTER HEIGHTS, | : | No. 1938 EDA 2018 |
| APPEAL OF:  THERESA AGOSTINELLI AND DREW BAUM | : | |

Appeal from the Order Dated June 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  01438 February Term, 2018

| JOY M. FOX | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| STACEY SMITH, DREW J. BAUM, GINAMARIE ELLIS, THERESA AGOSTINELLI, STEVE COCOZZA, ELLEN LUONGO, STEVEN LUONGO, MARYANN D. FURLONG, RICHARD B. KERNS, WILLIAM PASCALE, REPUBLICAN COMMITTEE OF CHESTER HEIGHTS AND COMMITTEE FOR THE FUTURE OF CHESTER HEIGHTS, | : | No. 1942 EDA 2018 |
| APPEAL OF:  STACEY SMITH | : | |

Appeal from the Order Dated June 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 01438 February Term, 2018

| JOY M. FOX | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STACEY SMITH, DREW J. BAUM, | : | |
| GINAMARIE ELLIS, THERESA | : | |
| AGOSTINELLI, STEVE COCOZZA, | : | No. 1952 EDA 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| FOR THE FUTURE OF CHESTER | : | |
| HEIGHTS, | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: WILLIAM PASCALE AND | : | |
| DREW BAUM | : | |

Appeal from the Order Dated June 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 01438 February Term, 2018

| JOY M. FOX | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STACEY SMITH, DREW J. BAUM, | : | |
| GINAMARIE ELLIS, THERESA | : | |
| AGOSTINELLI, STEVE COCOZZA, | : | No. 1968 EDA 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| | : | |

- 2 -

| FOR THE FUTURE OF CHESTER HEIGHTS, | : |
| | : |
| | : |
| | : |
| APPEAL OF:  ELLEN LUONGO, STEVEN LUONGO, REPUBLICAN COMMITTEE OF CHESTER HEIGHTS, AND COMMITTEE FOR THE FUTURE OF CHESTER HEIGHTS (COLLECTIVELY, "MOVING DEFENDANTS") | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |

Appeal from the Order Dated June 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  01438 February Term, 2018

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI[*], J.

OPINION BY PELLEGRINI, J.:                                    **FILED MAY 23, 2019**

The Appellants, Stacey Smith, Drew J. Baum, Ginamarie Ellis, Theresa Agostinelli, Steve Cocozza, Ellen Luongo, Steven Luongo, Maryann D. Furlong, Richard B. Kerns, William Pascale, the Republican Committee of Chester Heights, and the Committee for the Future of Chester Heights, seek review of the orders entered on June 15, 2018, in the Court of Common Pleas of the First Judicial District overruling their preliminary objections to venue.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

This defamation case stems from a 2017 mayoral campaign held in Chester Heights, a borough of Delaware County. The Appellee, Joy Fox, ran as the Democratic candidate against Stacey Smith, the Republican candidate. Allegedly, Smith and the other Appellants posted false information about Fox on a website they created called www.chfactcheck.com indicating that she had been charged with check fraud in North Carolina in the 1990s. The website contained links to several background checks which purported to document the charges. The Appellants promoted the website to residents of Chester Heights with online social media posts, local campaign flyers and billboards. Smith won the election and became mayor of Chester Heights.

In her complaint, Fox alleged that the check fraud claim was false and asserted several causes of action against the Appellants, including civil conspiracy, defamation and false light. She filed suit not in Delaware County but rather in Philadelphia County. Fox averred that her claims were filed in a proper forum because the Appellants' flyers were read by mail processors in Philadelphia County and the information which the Appellants published on the above website was accessed by residents there, including a personal friend of Fox (Kellie Clark), who understood the check fraud story to be damaging to Fox's reputation.

The Appellants each filed preliminary objections asserting that venue was improper in Philadelphia County. In overruling those objections, the trial

court applied the rule set forth in ***Gaetano v. Sharon Herald Co.***, 231 A.2d 753 (Pa. 1967), a case involving a defamatory newspaper article. ***See*** Trial Court Opinion, 8/30/18, at 4-5. The Pennsylvania Supreme Court held in ***Gaetano*** that a defamation claim may be filed in a county where the material is disseminated to a third party who personally knows the plaintiff and understands the material to be defamatory.

The Appellants assert in their brief that the trial court erred in applying ***Gaetano***, which they claim is out-of-date and impracticable as to internet-based defamation claims. The Appellants make two main sub-arguments in support of a new venue rule: (a) Delaware County is the only proper forum because it is where all the parties reside and where most of Fox's reputational harm occurred; and (b) forum should be limited to Delaware County because the Appellants did not intend for their online postings to have an effect anywhere else.

## II.

### A.

This appeal concerns a purely procedural question of law as to whether Fox filed suit in an appropriate forum. Specifically, the issue is one of venue, which "relates to the right of a party to have the controversy brought and heard in a particular judicial district." ***Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003). The venue of a court of common pleas is "generally prescribed by rules" of the Pennsylvania Supreme Court. ***Id.*** (citing 42

Pa.C.S. § 931(c)). Pa.R.C.P. 1006 provides in pertinent part that "an action against an individual may be brought in and only in a county . . . where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law[.]" Pa.R.C.P. 1006(a)(1); **see also** Pa.R.C.P. 2179(a)(4) (providing that "a personal action against a corporation or similar entity may be brought in . . . a county where a transaction or occurrence took place out of which the cause of action arose[.])"[1]

The transaction or occurrence of a defamation action involves "publication" of defamatory material. **See Flaxman v. Burnett**, 574 A.2d 1061, 1066 (Pa. Super. 1990) ("An essential element of a defamation action is publication.").[2] In **Gaetano**, the Pennsylvania Supreme Court held that venue is proper in a place of publication, which was defined as the forum where a communication was read by a third party personally known to the plaintiff, such as her "neighbors or associates," causing harm to the plaintiff's

---

[1] Although a plaintiff generally may decide the forum in which to file suit, the issue of whether venue in a given county is proper is treated the same way as a challenge to a court's jurisdiction to hear the case. **See Deyarmin v. Consol. Rail Corp.**, 931 A.2d 1, 10 (Pa. Super. 2007) (citing **Kring v. Univ. of Pittsburgh**, 829 A.2d 673, 676 (Pa. Super. 2003)).

[2] The **Gaetano** Court explained that "[t]he most important function of an action for defamation is to give the innocent and injured plaintiff a public vindication of his good name. Its primary purpose is to restore his unjustly tarnished reputation, and 'reputation is the estimation in which one's character is held by his neighbors or associates.'" 231 A.2d at 755 (citing Restatement, Torts § 577, comment b (1938)).

- 6 -

reputation. 231 A.2d at 755. Further, for the material to cause the requisite harm, the third party must understand it be defamatory. *Id*.

The *Gaetano* Court applied that rule in holding that venue for the plaintiff's suit was proper in Allegheny County, where the plaintiff suffered reputation harm, regardless of the fact that the defendants had printed the subject newspapers in Mercer County. The Court explained that

> if one writes or prints a defamatory letter in Mercer County and mails it to an addressee in Allegheny County, there obviously is no publication of the libel until the letter is read in Allegheny County and (which is most important) understood as being defamatory of the plaintiff.

*Id*.

*Gaetano* was decided in 1967. Since that time, no Pennsylvania court has deviated from its venue rule for defamation cases. The central inquiry has, therefore, remained whether the plaintiff suffered reputational harm in a given county and not how easily a given medium can transmit the defamatory material. The parties in this case agree that if the *Gaetano* venue rule applies, then the orders on review must stand. However, the parties differ on whether *Gaetano* applies as to an *internet* defamation suit and this appears to be an issue of first impression in Pennsylvania.

**B.**

In the absence of Pennsylvania law regarding the precise issue at hand, the federal courts' approach to venue is instructive.[3]  Although several federal courts have noted the difficulty in formulating a workable venue rule for internet defamation claims, they tend to support Fox's position that Philadelphia County is a proper forum.

For example, in ***Capital Corp. Merch. Banking v. Corp. Colocation, Inc.***, 2008 WL 4058014, at *2 (M.D. Fla. Aug. 27, 2008), a plaintiff asserted claims in Florida against Pennsylvania defendants due to material posted on a website.  The court expressed concern that "the harm from an online defamatory statement can occur in any place where the website . . . is viewed[.]" ***Capital Corp.***, 2008 WL 4058014, at *2.  Venue was nevertheless held to be proper in Florida because the plaintiff had alleged "that the website was accessed in this District, that it suffered harm to its reputation in this District, and that it suffered an economic injury in this District." ***Id***.  These circumstances created a "substantial nexus" between the plaintiff's chosen forum of Florida and the acts originating in Pennsylvania which gave rise to the defamation claim. ***Id***.

---

[3] The decisions of federal courts other than the United States Supreme Court are not binding but may be considered as persuasive authority.  ***See generally Hall v. Pennsylvania Bd. of Prob. & Parole***, 851 A.2d 859, 863 (Pa. 2004).

Crucially, under this framework, the plaintiff's choice of forum is not limited by her place of residence. In fact, in a case involving internet defamation, a court cited **Capital Corp.** in holding that venue is proper in any forum where the plaintiff has suffered the requisite harm to her reputation:

> Nor is the Court persuaded by Defendants' argument that venue should lie in the district in which publication occurred and Plaintiffs reside. Defendants are correct in that, "in the context of defamation and other nonphysical torts, courts generally hold that venue under Section 1391 (b)(2) is proper in the district where the injured party resides and the defamatory statements were published." **Capital Corp.**, 2008 WL 4058014, at *3 (collecting cases). **However, these cases do not address, much less rule out, the possibility of venue lying in another judicial district where the plaintiff does not reside, but nevertheless has suffered economic or reputational injury, and where publication has occurred**.
>
> **Indeed, the holdings in these cases appear to be consistent with the prevailing approach in the defamation context that "venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district**." **Kravitz v. Niezgoda**, 2012 WL 4321985, at *4 (E.D. Pa. Sept. 21, 2012).

**Eakin v. Rosen**, 2015 WL 8757062, at *6 (S.D. Ga. Dec. 11, 2015) (emphasis added, some citations omitted) (overruling defendants' objection to venue where plaintiffs resided in the Middle District of Georgia but filed a defamation suit in the Southern District of Georgia based in part on internet postings).

Most recently, in **Seidel v. Kirby**, 296 F.Supp. 3d 745 (D. Md. 2017), the court stressed that venue in internet defamation actions should not be based solely on whether a third party in a particular forum has accessed material understood to be defamatory toward a plaintiff:

This rule, that an act of defamation "occurs" where it is publicized such that it may harm a plaintiff's reputation, is of little help when the publication is effectively world-wide. It would seem that, in the context of defamation publicized over the Internet, such a rule would make venue proper in any district in the United States.

296 F.Supp. 3d at 753 (citations omitted).

To reduce the number of possible venues for an internet defamation suit, the **Seidel** court narrowly construed the federal venue statute, 28 U.S.C. § 1391. Part (a)(2) of that statute makes venue proper in a judicial district only where a "substantial part" of the underlying conduct giving rise to the claim occurred. **Id**. at 753-54. The **Seidel** court held that for the purposes of part (a)(2), a "substantial part" of a defamation action occurs when a third party "actually knows" the plaintiff, reads the defamatory material, and understands it to be defamatory:

The venue statute, however, does not authorize venue in any district where *any* events that gave rise to the action occurred, but rather where a **substantial part** *of* those actions occurred. Therefore, while it may not always be the case, the district in which a plaintiff resides is often going to be where the substantial part of the **harmful** publication occurred, i.e. where people are exposed to the material who may actually know the plaintiff or interact with him in a way that could be affected by the information.

**Id**. at 753 (emphases in original).[4]

---

[4] Although the plaintiffs in **Seidel** filed suit in the same forum where they resided, the court cited favorably to **Eakin's** conclusion that venue in that case was "proper in a different district" than forum of the plaintiffs' residence because reputational harm occurred there. **Seidel**, 296 F.Supp. 3d at 753.

While couched in slightly different language, the above federal courts have adopted a venue rule for internet defamation that mirrors the principles of **Gaetano**. We follow the lead of those authorities in holding that a plaintiff may file a defamation action in any county where an internet posting causes the requisite harm to the plaintiff's reputation. As outlined in **Gaetano**, this harm occurs when an internet communication is read by a third party who the plaintiff knows personally and who understands the communication to be harmful to the plaintiff's reputation. **See Gaetano**, 231 A.2d at 755-56. Since the county in which that third party lives is a place of publication, it is a place where the plaintiff may file suit. **Id**.

Under this standard, the Appellants' objection to venue in Philadelphia County was properly overruled. Fox alleged that her friend resided in Philadelphia County and read material on a website which had been posted by the Appellants. Fox's friend understood the material to be defamatory. This reputational harm made the friend's county of residence a place of publication and a proper venue for Fox's defamation claims.[5]

---

The dispositive factor in both of those cases is that venue lays wherever the reputational harm occurs, including but not limited to where the plaintiff lives.

[5] We find no merit in Fox's alternative basis for venue – that the Appellants' campaign flyers were read by mail processors in Philadelphia County. Fox did not allege that she personally knew the workers in the mail processing facility so the flyers caused her no reputational harm for the purposes of venue.

## C.

Finally, we decline to limit venue to Delaware County based on the Appellants' stated intent to damage Fox's reputation only in that lone forum. The website in question was accessible to the general public. The Appellants knew or should have known the scandalous information they posted online (and advertised with campaign flyers and social media posts) would be read by Fox's neighbors or associates throughout the state. **See Reed v. Brown**, 166 A.3d 570, 576 (Pa. Cmwlth. 2017) (holding that venue was proper in forum other than place of original publication where a defendant's agent republished the defamatory material, since "republication" was "authorized, intended or reasonably expected.").

Fox therefore had the choice to file suit in Philadelphia County, where she is alleged to have suffered reputational harm. If litigating in that forum caused the Appellants any hardship or inconvenience, then their remedy was to move to dismiss or transfer the case on those grounds.[6]

_____

[6] "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought." Pa.R.C.P. 1006(d)(1). "[A] petition to transfer venue should be granted only if the defendant 'demonstrates, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant.'" **Bratic v. Rubendall**, 99 A.3d 1, 7 (Pa. 2014) (citing **Cheeseman v. Lethal Exterminator, Inc.**, 701 A.2d 156, 162 (Pa. 1997)). "Transfer on *forum non conveniens* grounds is proper only if the defendant proves that the chosen forum is oppressive to him." **Moody v. Lehigh Valley Hosp.-Cedar Crest**, 179 A.3d 496, 508 (Pa. Super. 2018). Determining whether a forum is

Orders affirmed.

Judge Kunselman joins the Opinion.

Judge Murray files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/19

---

oppressive "requir[es] consideration of the totality of the circumstances. The distance between the two forums, the disruption to the parties' personal and professional lives, are part of the equation, but no one factor is dispositive." *Id.* at 508 n.9.