**[J-54A-D-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JOY M. FOX | : | No. 39 EAP 2019 |
| | : | |
| v. | : | Appeal from the Order entered 5/23/19 |
| | : | in Superior Court at 1938 EDA 2018 |
| | : | affirming the order dated 6/15/18 of |
| STACEY SMITH, DREW J. BAUM, | : | the Court of Common Pleas, |
| GINAMARIE ELLIS, THERESA | : | Philadelphia County, Civil Division at |
| AGOSTINELLI, STEVE COCOZZA, | : | 1438 February Term, 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | ARGUED:  September 22, 2021 |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| FOR THE FUTURE OF CHESTER | : | |
| HEIGHTS | : | |
| | : | |
| | : | |
| APPEAL OF:  THERESA AGOSTINELLI | : | |
| AND DREW BAUM | : | |
| | : | |
| Appellant | : | |
| | | |
| JOY M. FOX | : | No. 40 EAP 2019 |
| | : | |
| v. | : | Appeal from the Order entered 5/23/19 |
| | : | in Superior Court at 1942 EDA 2018 |
| | : | affirming the order dated 6/15/18 of |
| STACEY SMITH, DREW J. BAUM, | : | the Court of Common Pleas, |
| GINAMARIE ELLIS, THERESA | : | Philadelphia County, Civil Division at |
| AGOSTINELLI, STEVE COCOZZA, | : | 1438 February Term, 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | ARGUED:  September 22, 2021 |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| FOR THE FUTURE OF CHESTER | : | |
| HEIGHTS | : | |
| | : | |
| APPEAL OF:  STACEY SMITH | : | |
| | : | |
| Appellant | : | |

| | | |
|---|---|---|
| JOY M. FOX | : | No. 41 EAP 2019 |
| | : | |
| v. | : | Appeal from the Order entered 5/23/19 |
| | : | in Superior Court at 1952 EDA 2018 |
| | : | affirming the order dated 6/15/18 of |
| STACEY SMITH, DREW J. BAUM, | : | the Court of Common Pleas, |
| GINAMARIE ELLIS, THERESA | : | Philadelphia County, Civil Division at |
| AGOSTINELLI, STEVE COCOZZA, | : | 1438 February Term, 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | ARGUED: September 22, 2021 |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| FOR THE FUTURE OF CHESTER | : | |
| HEIGHTS | : | |
| | : | |
| | : | |
| APPEAL OF: WILLIAM PASCALE AND | : | |
| DREW BAUM | : | |

| | | |
|---|---|---|
| JOY M. FOX | : | No. 42 EAP 2019 |
| | : | |
| v. | : | Appeal from the Order entered 5/23/19 |
| | : | in Superior Court at 1968 EDA 2018 |
| | : | affirming the order dated 6/15/18 of |
| STACEY SMITH, DREW J. BAUM, | : | the Court of Common Pleas, |
| GINAMARIE ELLIS, THERESA | : | Philadelphia County, Civil Division at |
| AGOSTINELLI, STEVE COCOZZA, | : | 1438 February Term, 2018 |
| ELLEN LUONGO, STEVEN LUONGO, | : | |
| MARYANN D. FURLONG, RICHARD B. | : | |
| KERNS, WILLIAM PASCALE, | : | ARGUED: September 22, 2021 |
| REPUBLICAN COMMITTEE OF | : | |
| CHESTER HEIGHTS AND COMMITTEE | : | |
| FOR THE FUTURE OF CHESTER | : | |
| HEIGHTS | : | |
| | : | |
| | : | |
| APPEAL OF: ELLEN LUONGO, STEVEN | : | |
| LUONGO, REPUBLICAN COMMITTEE | : | |
| OF CHESTER HEIGHTS, AND | : | |
| COMMITTEE FOR THE FUTURE OF | : | |
| CHESTER HEIGHTS (COLLECTIVELY, | : | |
| "MOVING DEFENDANTS") | : | |

*OPINION*

JUSTICE SAYLOR                                    DECIDED:  November 17, 2021

This appeal concerns whether the standards governing the selection of an appropriate venue for litigating libel or defamation claims grounded on newspaper publications should also be applied to causes of action premised on internet-based publication.

Per the applicable venue precepts reposed in the Pennsylvania Rules of Civil Procedure, an action against an individual or a corporation may be commenced in a county in which the cause of action arose.  *See* Pa.R.Civ.P. Nos. 1006(a)(1), 2179(a)(3). In *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 231 A.2d 753 (1967), a libel case deriving from a newspaper publication, this Court explained that, for purposes of redressing defamatory statements, a cause of action arises in locations where publication of the statements has occurred.  *See id.* at 182, 231 A.2d at 755.  *See generally* 42 Pa.C.S. §8343 (delineating publication by the defendant as an element of a cause of action for defamation).

The *Gaetano* Court further related that publication occurs where a statement is read by a third person and understood by that individual as being defamatory.  *See id.*; *accord* 42 Pa.C.S. §8343(a)(4), (5) (listing such circumstances as essential elements of the cause of action).  The Court elaborated that:

> The most important function of an action for defamation is to give the innocent and injured plaintiff a public vindication of his good name.  Its primary purpose is to restore his unjustly tarnished reputation, and "reputation is the estimation in which one's character is held by his neighbors or associates."

*Gaetano*, 426 Pa. at 183, 231 A.2d at 755 (quoting Restatement (First) of Torts §577, comment b (Am. Law Inst. 1938)).

In November 2017, Appellee Joy M. Fox appeared on the general-election ballot as the Democratic candidate for mayor of the Borough of Chester Heights in Delaware County. She was defeated, however, by the Republican candidate, Appellant Stacey Smith.

Appellee subsequently brought a civil action in Philadelphia County against Smith, along with other individuals and Republican-affiliated organizations (collectively, "Appellants"), advancing multiple causes of action including defamation, false light, and civil conspiracy. The complaint alleged, in relevant part, that during the campaign Appellants published information on internet and social media websites falsely accusing Appellee of having been charged, in North Carolina, with criminal conduct (*i.e.*, engaging in a fraudulent banking transaction). According to the complaint, Appellants created a website to promote the accusation and "promoted the website – and the outrageous defamatory statements about [Appellee] – through dozens of Facebook postings by individual [Appellants] and the party controlled Facebook page." Complaint in *Fox v. Smith*, No. 180201438 (C.P. Phila), at 2. Appellee further averred that the false allegations were also published in campaign flyers and posted on billboards in the Chester Heights locality.

Consistent with *Gaetano*, Appellee contended that venue was proper in Philadelphia County, *inter alia*, because Appellants' website was accessible to – and accessed by – Philadelphia residents. These included one of Appellee's friends who was identified in the complaint and who had assertedly understood the posted information to be damaging to Appellee's reputation.

Appellants interposed preliminary objections challenging the appropriateness of venue in Philadelphia County, which the common pleas court overruled. While the county court commented that the controlling principles should be reevaluated in light of evolving

technology -- including the advent of internet-based social media -- it considered itself bound by the foregoing precepts taken from *Gaetano.*

In an ensuing interlocutory appeal, the Superior Court affirmed. *See Fox v. Smith*, 211 A.3d 862 (Pa. Super. 2019). According to the majority, extending the *Gaetano* approach to internet-based communications was consistent with the treatment by various federal courts. *See id.* at 866-68 (citing, *inter alia*, *Seidel v. Kirby*, 296 F. Supp. 3d 745, 753 (D. Md. 2017), and *Capital Corp. Merch. Banking v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, *slip op.*, 2008 WL 4058014, at *2 (M.D. Fla. 2008)).[1]

Moreover, the majority found that the rationale of *Gaetano* remained sound, even as applied to internet-based publication. *See id.* at 868 (reasoning that the alleged reputational harm in Philadelphia County associated with Appellee's friend "made the friend's county of residence a place of publication and a proper venue"). In this regard, the majority admonished that "Appellants knew or should have known the scandalous information they posted online . . . would be read by [Appellee's] neighbors or associates throughout the state." *Id.* To the degree that Appellants could establish that litigation in Philadelphia County was unduly burdensome, the majority noted that a transfer of venue could be pursued on grounds of *forum non conveniens*. *See id.* (citing Pa.R.C.P. No. 1006(d)(1)).

Judge Murray concurred in the result. In light of the exponential growth of technology and its novel applications, she wrote to "underscore that the courts of this Commonwealth – both at the intermediate appellate and trial levels – would benefit from

---

[1] The majority apprehended that the federal venue statute at issue in these cases requires, in relevant part, that "a *substantial part* of the events or omissions giving rise to the claim" occur in the judicial district in which the claim is to be brought. 28 U.S.C. §1391(b)(2) (emphasis added). Nevertheless, the majority opined that the federal approach "mirrors the principles of *Gaetano.*" *Fox*, 211 A.3d at 867.

decisional and statutory guidance in establishing legal principles such as venue." *Id.* at 869 (Murray, J., concurring).

Appeal was allowed to consider Appellants' challenge to the application of the precepts addressed in *Gaetano* in the internet sphere. From the outset, they stress that the present action involves a dispute among Delaware County residents arising out of internet and social media posts originated in Delaware County during a mayoral election in Delaware County. To the degree that the alleged defamation affected the Chester Heights mayoral race or Appellee's reputation or career, Appellants assert, "those impacts were keenly felt in Delaware County." Brief for Appellants at 13. They also observe that the complaint fails to allege that their targeted audience included anyone other than registered voters in Chester Heights, Delaware County.

With regard to *Gaetano*, Appellants initially attempt to distinguish the decision, among other reasons, on the basis that the plaintiff's choice of forum in that case coincided with his location of residence.[2] To the extent that *Gaetano* turned on the principles governing the accrual of a defamation causes of action (as delineated in the applicable civil procedural rules), Appellants present various policy-based arguments why the approach shouldn't be extended to internet-based publication. In particular, they point to the relative ease of access to internet posts from any location and the fact that such posts can be copied, shared, and linked repeatedly without the original poster knowing

---

[2] *See* Brief for Appellants at 18 ("In *Gaetano*, the Pennsylvania Supreme Court was faced with deciding whether venue was proper in Allegheny County in a defamation action arising from a newspaper article written in Mercer County and included in a publication printed and primarily circulated in Mercer County, but where 25 copies thereof were sent by the publishing company through the mail to subscribers in Allegheny County, *where the plaintiffs resided.*" (citing *Gaetano*, 426 Pa. at 181, 231 A.2d at 754) (emphasis in original)); *see also* Reply Brief for Appellants at 2 ("*Gaetano* has been misinterpreted in this case as not taking the plaintiffs' residence into consideration when, in actuality, it was a key factor in this Court's holding.").

about -- much less approving or condoning -- such republication. In these circumstances, Appellants believe that additional constraints on venue are necessary to impose rational and effective boundaries, thus mitigating the possibility for contrivances and forum shopping. *See, e.g.*, Brief for Appellants at 17 (explaining that "[r]ules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction" (quoting *Commonwealth v. Bethea*, 574 Pa. 100, 114, 828 A.2d 1066, 1075 (2003))).

Returning to *Gaetano*, Appellants caution that this Court should not become "mired in an application of *stare decisis*," when extension of the decision's dictates would contravene of the purpose and foundation of the venue rules themselves. *Id.* at 15. In this respect, although they acknowledge that venue principles may allow some latitude to plaintiffs to institute suit is a county that is most suitable to them, Appellants emphasize that such precepts also serve to assure that the selected venue has a substantial relationship to the controversy. *See id.* (citing *Cty. Constr. Co. v. Livengood Constr. Corp.,* 393 Pa. 39, 44, 142 A.2d 9, 13 (1958)).

Appellants also relate that the decisions from other jurisdictions referenced by the intermediate court generally pertain to scenarios in which the plaintiff had resided in the selected forum. They recognize, however, that the governing federal venue statute differs from the applicable Pennsylvania Rules of Civil Procedure, in that the former expressly requires that a "*substantial part* of the events or omissions giving rise to the claim" occur in the forum. 28 U.S.C. §1391(b)(2) (emphasis added). Appellants nonetheless suggest that a similar requirement should pertain in Pennsylvania state courts, and they claim that any harm to Appellee suffered in Philadelphia County should be regarded as *de minimis*. *See* Brief for Appellants at 33-34.

Ultimately, Appellants favor the adoption of a venue rule, for defamation cases, focusing on the residence of the plaintiff and the location of the material conduct of the

defendants, as well as any purposeful actions on their part in introducing defamatory content into other locales.

Appellee, on the other hand, regards the present circumstances as embodying a difficulty, for Appellants, of their own making. It is precisely because they desired to employ the most expedient mechanism to reach a wide audience for their statements, she asserts, that Appellants utilized the internet and social media outlets for dissemination. Given the internet's pervasive accessibility throughout society, Appellee explains that it was readily foreseeable -- and indeed inevitable -- that defamatory statements reposited there would tarnish her reputation in disparate counties.

Because Appellants voluntarily "chose to use a scatter-shot approach to reach the broadest possible audience, and to spread the defamatory statements as quickly and broadly as possible," Appellee regards it as fair and just that she should have a choice of forums. Brief for Appellee at 8; *see also id.* at 12 ("What Appellants really seek is the ability to transmit defamatory material instantly across the internet, yet be shielded from the consequences of those actions by unnecessarily limiting where a plaintiff can lay venue."). In this regard, she highlights that the procedural rules governing venue generally can be viewed as tracking voluntary choices of the parties and reflecting consequences of those choices.

Additionally, Appellee notes that the *Gaetano* Court specified that publication of defamatory statements occurs whether the communication to a third party is intentional *or negligent. See Gaetano*, 426 Pa. at 182, 231 A.2d at 755 (citing Restatement (First) of Torts §577). Thus, the mere fact that Appellants may not have been specifically targeted Philadelphia County in disseminating their accusation, in her view, lacks essential relevance. Appellee also refutes the assertion that adherence to the accrual-based formulation embedded in the applicable procedural rules renders venue limitless.

*See* Brief for Appellee at 22 ("As publication can . . . occur only where the defamation is understood as applying to the defamed individual, it is inherently limited by the plaintiff's own network of associates – the very network that defamation law is supposed to protect.").

Responding to Appellants' contention that any injury suffered by Appellee in Philadelphia County is *de minimis*, she observes that the common pleas court afforded them the opportunity to conduct discovery for venue purposes. *See* Order dated Apr. 30, 2018, in *Fox*, No. 180201438. According to Appellee, Appellants failed to advantage themselves of such procedure, and concomitantly, presented no evidence to the county court concerning the scale of the reputational injury in the chosen forum. Given that, under prevailing Pennsylvania law directed to the resolution of preliminary objections, it is the movant's burden to establish that venue is improper, *see* Brief for Appellee at 23 n.4 (citing, *inter alia*, *Liggitt v. Liggitt*, 253 Pa. Super. 126, 131-32, 384 A.2d 1261, 1263-64 (1978)), Appellee argues that there simply is no predicate for crediting Appellants' bare allegation that any harm in Philadelphia County should be deemed insubstantial.

Appellee's central position is that *Gaetano*'s framework appropriately balances the interest of plaintiffs in restoring their reputations in forums in which they have been damaged with the ability of defendants to ensure that selected venues are meaningfully connected to the disputes.

Upon review, we credit Appellee's core position. As previously explained, under the applicable Rules of Civil Procedure, venue is proper, *inter alia*, in counties in which a cause of action has arisen. *See* Pa.R.C.P. Nos. 1006(a)(1), 2179(a)(3). A cause of action for defamation arises where publication of defamatory statements occurs. *Accord*

*Gaetano*, 426 Pa. at 182, 231 A.2d at 755. And publication occurs where a third-party recipient understands the statement as being defamatory. *Accord id.*[3]

When a person is defamed via a medium with worldwide accessibility, a cause of action may arise in multiple venues. Indeed, relative to defamatory statements, the General Assembly anticipated this in the Uniform Single Publication Act,[4] which provides for a single cause of action for damages for such statements and specifically that "[r]ecovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." 42 Pa.C.S. §8341(b).

Per a straightforward application of the civil procedural rules, then, a plaintiff may select a single venue in a defamation action in any location in which publication and concomitant injury has occurred, albeit that publication and harm may have ensued in multiple counties.[5] These are the rules which were in force at the time that Appellee lodged her complaint, and we decline to undertake to retroactively adjust them. In any event -- at least upon review of the competing policy arguments before us at this time -- the Court is not presently of a mind to consider prospective alterations via the rulemaking process.

---

[3] Since both the initial act of communication and receipt and apprehension by another are necessary to publication, we do not suggest that a cause of action arises *only* in the location where defamatory statements are received and apprehended. In this regard, the issue of whether venue is *also* proper where the communication originated is not presently before the Court.

[4] Act of July 9, 1976, P.L. 586, No. 142 (codified at 42 Pa.C.S. §8341).

[5] Consistent with Appellee's position, we find no basis in the record presented to support Appellants' contention that alleged injury to Appellee in Philadelphia County is *de minimis* or insubstantial. As such, we leave for future consideration whether, or to what degree, the explicit federal substantiality mandate (*see supra* note 1) may differ from the Pennsylvania civil procedural rules, which do not impose such a requirement, at least overtly.

The order of the Superior Court is affirmed.

Chief Justice Baer and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.